489 A.2d 1334

**Michael TRACY and Frank McCarton, t/a Tyrone Development Company, Appellants,**

**v.**

**COUNTY OF CHESTER, TAX CLAIM BUREAU, and Tom Swift, et al., Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1984.

Decided April 3, 1985.

Frank J. Williams, Phoenixville, for appellants.

Wayne C. Buckwalter, West Chester, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1974 three individuals, John McGarrigle, Michael Tracy and Frank McCarton formed a partnership trading under the name of Tyrone Development Company. The company's fictitious name was registered both in Montgomery County and also in Harrisburg, and the partnership purchased a plot of land for $4,000 in the Borough of Downing-

town, Chester County on December 10, 1974. The deed named the grantee as Tyrone Development Company and did not indicate the names of any of the company's principals. The Tax Claim Bureau records indicated the company's address as 22 Darby Road, Havertown, Montgomery County, Pennsylvania, which was the personal residence of John McGarrigle.

During 1975, the partnership paid its borough and school taxes, but did not pay its county taxes. The 1975 taxes that were paid (borough and school), were paid by a check which bore the printed designation "Tyrone Development Company," with no address noted. In the fall of 1975, McGarrigle withdrew from the partnership and moved to a new address in Havertown. The taxing authorities of Chester County were not informed of this change in the partnership or of any new address and continued to send tax statements to McGarrigle's old address at 22 Darby Road. McGarrigle's mail was forwarded to his new address for a period of one year, until October, 1976.

During 1976 the partnership paid its borough taxes, but not its county or school taxes. The borough taxes were paid by a check bearing the designation "Tyrone Development Company, 1003 Hunter's Lane, Oreland, Pa. 19075." However, the borough did not note that the address appearing on the check was a new address, and, in June of 1976 the Tax Claim Bureau sent a notice of delinquency to Tyrone Development Company at the old 22 Darby Road address. The notice was sent certified mail with delivery restricted to Tyrone Development Company. Although the notice was sent to the 22 Darby Road address, it was forwarded by the post office to McGarrigle's new address, and Ann McGarrigle, John's wife, signed the receipt. John McGarrigle then told Michael Tracy that he had received a tax delinquency notice, but Tracy thought that the delinquency notice referred to an amount which he had only recently paid, and so he took no further action. Having received no payment for the 1975 delinquency, the Tax Claim Bureau sent another notice, approximately a year

later, in June of 1977, of an impending tax sale because of tax delinquency. This notice also was addressed to the 22 Darby Road, Havertown address, but this time the notice was returned to the bureau undelivered because the one year forwarding order for McGarrigle's address was no longer effective.

On September 12, 1977 the property, which had been purchased for $4,000 and was valued, according to evidence of record, at $9,000 at the time of trial, was sold at tax sale for the sum of $400 to four individuals, Tom Swift et al, who are the appellees herein, because of a tax delinquency in the amount of $9.45. Early in 1978, when the two remaining partners of Tyrone Development Company were negotiating a sale of the property, they discovered that they no longer owned the property because it had been sold at a tax sale, and in March of 1978 they filed an action in the Court of Common Pleas of Chester County to set aside the sale on the ground that the Tax Claim Bureau failed to comply with the notice provisions of the Real Estate Tax Sale Law. Common Pleas Court set aside the sale on the grounds that the notice provisions of the Real Estate Tax Sale Law requiring notice to be sent to the owner's last known address, were not complied with. Noting that the Real Estate Tax Sale Law required notice of a tax sale to be sent to the owner's last known address and that Tyrone Development Company paid some of the taxes it owed in 1976 by checks indicating a new address at 1003 Hunters Lane, Oreland, Pa., the court held that the borough tax collector was on notice that there had been an address change. Since the knowledge of the borough tax collector is imputed to the Tax Claim Bureau, the notice of sale, according to Common Pleas Court, was defective, for it was not mailed to Tyrone's last known address, as is required under the Act.

On appeal, Commonwealth Court reversed on the grounds that the printing of a new address on a check submitted to the tax collector does not, without more, put the tax collector on notice that there has been an address change. 76

Pa.Commw.Ct. 334, 463 A.2d 1251. The court noted that in the cases in which it was held the tax collector was on notice of a change of address, there were additional critical facts: *Clawson Appeal,* 39 Pa.Commw.Ct. 492, 395 A.2d 703 (1979) (notice of address change was effective where taxpayer hand-corrected address on printed check and called tax collector); *Plank Appeal,* 69 Pa.Commw.Ct. 442, 451 A.2d 793 (1982) (notice of address change was effective where taxpayer circled address change on the check in red and included a note to tax collector informing him of the change); *Pinto Appeal,* 72 Pa.Commw.Ct. 218, 455 A.2d 1294 (1983) (notice of an address change was *ineffective* when notice to tax collector consisted only of a new return address on an envelope). Further, Commonwealth Court noted its decisions in *Boehm v. Barnes,* 63 Pa.Commw.Ct. 87, 437 A.2d 784 (1981), where it held that local authorities must provide notice to each owner and to each partner whose name appears as an owner on tax records, but it need not notify silent partners or partners whose names do not appear on tax records. It also noted its decision in *Brown v. Barnes Real Estate,* 44 Pa.Commw.Ct. 439, 404 A.2d 437 (1979), holding that tax authorities may not be charged with information known to the recorder of deeds or be required to search deed records for owners. We granted allocatur to address the constitutional adequacy of the Tax Claim Bureau's and the lower courts' interpretation of the notice requirements of the Real Estate Tax Sale Law. Because we find the interpretation of the bureau and Commonwealth Court constitutionally infirm, we reverse.

Provisions of the Real Estate Tax Sale Law concerning notice which were applicable at the time of this sale required that prior to a tax sale, there must be notice by publication, posting and by certified mail to owners of the property.[1] The act defines "owner" as:

1. The notice provisions of the act in effect at the time of the sale in this case were as follows:

Notice of Sale.—Prior to any scheduled sale the bureau shall give notice thereof, once a week for three (3) consecutive weeks in two (2) newspapers of general circulation in the county, if so many are

the person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having

published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (a) the purposes of such sale, (b) the time of such sale, (c) the place of such sale, (d) the terms of the sale including the approximate upset price, (e) the descriptions of the properties to be sold as stated in the claims entered, each description commencing with

. . . . .

Name of Owner

. . . .

description

Where the owner is unknown and has been unknown for a period of not less than ten years, the name of the owner need not be included in such description.

The description may be given intelligible abbreviations.

Such published notice shall be addressed to the "owners of properties described in this notice and to all persons having tax liens, tax judgments or municipal claims against such properties."

In addition to such publications, similar notice of the sale shall also be given by the bureau, at least ten (10) days before the date of the sale, by United States certified mail, personal addressee only, return receipt requested, postage prepaid, to each owner as defined by this act and by posting on the property.

The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the date of sale enters into an agreement with the bureau to pay the taxes in instalments, in the manner provided by this act, and the agreement entered into.

In case the property of any corporation, limited partnership or joint-stock association is advertised for sale, the bureau shall give to the Department of Revenue the notice required by section one thousand four hundred two of the Fiscal Code of the ninth day of April, one thousand nine hundred twenty-nine (Pamphlet Laws 343).

No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section.

The costs of such advertisement and notices shall be taxed as part of the costs of such proceedings and shall be paid by the owner the same as other costs.

Act of July 7, 1947, P.L. 1368, No. 542, Section 5860.602, *as amended* by the act of Sept. 27, 1973, P.L. 268, No. 74, § 6, 72 P.S. § 5860.602.

been turned over to the bureau by any county, "owner" shall mean the county.

72 P.S. § 5860.102.

Appellees claim that the Tax Claim Bureau complied with all of the requirements of the act and that where there was no information of record within the tax system concerning a change of address for Tyrone Development Company, the bureau was required under the statute and applicable law to do no more than it did. This position finds support in the *Boehm* and *Brown* cases cited by Commonwealth Court, supra, which hold that tax authorities need not search for the names of partner-owners whose names do not appear on tax records and that they need not search deed records for owners. Thus, the question in this case is whether the notice provisions of the Tax Sale Law, *as they have been interpreted* in the past, are constitutionally sound.

The problem of whether a certain type of notice meets due process requirements when property rights may be significantly affected by some impending event was addressed by the United States Supreme Court in the landmark case of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and more recently in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Mennonite Board* the United States Supreme Court set aside a tax sale of property for non payment of taxes because a mortgagee of record was not given notice mailed to the mortgagee's last known address or by personal service of the impending sale. The sale was set aside in spite of the fact that there had been notice of the sale by posting and by publication, pursuant to a tax sale statute.

Justice Marshall, writing for a majority of the Court, stated that this decision was based on *Mullane*, in which "the Court held that published notice of an action to settle accounts of a common trust fund was not sufficient to inform beneficiaries of the trust whose names and addresses were known. *Id.* at 791, 103 S.Ct. at 2709, 77 L.Ed.2d at 185. The thrust of this analysis, as applied to *Mennonite*

*Board,* is that where the name and address of the party affected are known or ascertainable after reasonable effort to determine them, a party with a legally protected property interest "is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Id.* at 793, 103 S.Ct. at 2708, 77 L.Ed.2d at 187. Justice Marshall writes:

> When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane.

*Id.*

In *First Pennsylvania Bank v. Lancaster County Tax Claim Bureau,* 504 Pa. 179, 470 A.2d 938 (1983) we applied the rule of *Mennonite Board,* holding that the notice provisions of the Real Estate Tax Sale Law violated the due process rights of record mortgagees in that the statute did not require personal or mailed notice to record mortgagees. *Id.,* 504 Pa. at 186, 470 A.2d at 942. Most recently in *In Re Upset Sale, Tax Claim Bureau of Berks County v. Schumo,* 504 Pa. 183–184, 479 A.2d 940 (1984), we held that the notice provisions of the Real Estate Tax Sale Law violated the due process rights of a judgment creditor whose judgment was publicly recorded, and thus, whose identity, like that of the mortgagee, was reasonably ascertainable, but who received no personal service or mailed notice, where, under Pennsylvania law, a judgment operates as a lien upon all real property of the debtor in the county, giving the judgment creditor a legally protected property right.

A thread running through all of these cases, beginning with *Mullane,* is the mandate that under the due process clause a *reasonable effort* must be made to provide *actual* notice of an event which may significantly affect a legally protected property interest. In *Mullane* published notice of an action to settle accounts of a trust fund was relied upon, without notice mailed to individuals or personal service,

even though the names and addresses of trust beneficiaries were known. It was unreasonable, in these circumstances, to rely upon published notice. In *Mennonite Board* the name of the mortgagee was on file with the county recorder, and although its address was not on file, the address *"could have been ascertained by reasonably diligent efforts."* 462 U.S. at 798, n. 4, 103 S.Ct. at 2711, n. 4, 77 L.Ed.2d at 187, n. 4. (Emphasis supplied). Similarly, in the *First Pennsylvania Bank* and *In Re Upset Sale, Tax Claim Bureau of Berks County,* supra, mailed notice of a tax sale or personal service could reasonably have been affected by a check of public mortgage and judgment indexes.

The United States Supreme Court took care to note in *Mennonite Board* that a government body is not required to make "extraordinary efforts" to discover the identity and address of a person whose property interests are likely to be significantly affected by a tax sale, but only reasonable efforts. *Id.*

▆▆▆ Applying these principles to the present case, we hold that where a taxing authority intends to conduct a sale of real property because of nonpayment of taxes, it must notify the record owner of property by personal service or certified mail, *and where the mailed notice has not been delivered because of an inaccurate address,* the authority must make a *reasonable effort* to ascertain the identity and whereabouts of the owner(s).[2] In the present case, a reasonable effort would have been to make inquiry of the records maintained by the office of the Secretary of the Commonwealth in Harrisburg to determine the identity and addresses of the partners.

2. This Court must exercise every reasonable attempt to uphold the constitutionality of legislation enacted by our General Assembly. Thus, we make it clear that we are not impugning the constitutionality of the act, but rather, we are construing the past administrative and judicial interpretation of the act in light of constitutional requirements that are deep rooted in the constitutions of this Commonwealth and the United States.

 Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes. We have had occasion before to note that we hold no brief with wilful, persistent and long standing tax delinquents, but at the same time, we have also observed that the "strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error ... to pay their taxes." *Ross Appeal*, 366 Pa. 100, 107, 76 A.2d 749, 753 (1950). As this Court stated in *Hess v. Westerwick*, "the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes." 366 Pa. 90, 98, 76 A.2d 745, 748 (1950). The collection of taxes, however, may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process, as we have stated here, requires at a minimum that an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state. Reasonable efforts to effect actual notice were not carried out in this case, and the tax sale of this property must be set aside.

Reversed.

ZAPPALA, J., files a Concurring and Dissenting Opinion which LARSEN, J., joins.

ZAPPALA, Justice, concurring and dissenting.

While I agree with the result reached by the majority, I strongly disagree with the procedure required of the Tax Bureau to satisfy our Constitution. Once again, the majority has overextended the holding of *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), thus tainting the essence of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Under *Mullane*, the United States Supreme Court required reasonable notice, *under the circumstances*, to parties who were about to lose their property

interest, so as to give them the opportunity to object. Thus, the Supreme Court required personal notice to any *known* beneficiary of a common trust prior to the scheduled judicial settlement of the accounting. Likewise, in *Mennonite Board*, the Supreme Court only required that personal service be given to a record owner prior to any attempt to divest his property interest. Constructive notice was constitutionally infirm when the owner's identity was ascertainable from public records. Today, the majority extends this rationale to require the Tax Bureau to take affirmative action to ascertain the owner when such identity is not of record.

As the majority correctly states today,

The thrust of this analysis, as applied to *Mennonite Board*, is that where the name and address of the party affected are known or ascertainable after reasonable effort to determine them, a party with a legally protected property interest "is entitled to notice reasonably calculated to apprise him of a pending tax sale. *Id.* at 793, 103 S.Ct. at 2708, 77 L.Ed.2d at 187.

At p. 1338.

Such a reasonable mechanism exists as the result of the adoption of the Fictitious Name Act, formerly 54 P.S. 28.1 et seq., now 54 Pa.C.S.A. § 101 et seq., which requires registration of all interested parties and their addresses when operating under a fictitious name. Therefore, I see no problem with requiring a taxing body to examine the Fictitious Name Registry. However, I cannot agree that a taxing body must do more if the property owner has failed to comply with the statute promulgated to insure that real parties in interest are listed so as to enable the general public to discover, locate and identify them. As Justice O'Connor in her dissent in *Mennonite Board* stated, "if the members of a particular class generally possess the ability to safeguard their interests, then this fact must be taken into account when we consider the 'totality of circumstances' as required by *Mullane.*" 103 S.Ct. at 2714. Thus, if a party fails to comply with the Fictitious Name Act as

required by law, this Court should not create a safeguard for those individuals who fail to protect their own interests.

In the present case, I would have only required the Tax Bureau to examine the Fictitious Name Registry to comply with constitutional notice requirements. If the Appellants failed to amend their registration, then the Bureau cannot be held responsible for its inability to ascertain the true identity and location of the real parties in interest. The majority's expansion of *Mullane* and *Mennonite Board* is unwarranted. Both cases required *reasonable* efforts to ascertain landowners prior to disposition of property. Today, the majority places an *unreasonable* burden upon the Tax Bureau, requiring it to ascertain the true identity of property owners who fail to safeguard their own interests.

For these reasons, I cannot agree with this Court's new constitutional requirement.

LARSEN, J., joins in this concurring and dissenting opinion.