545 A.2d 950

Marvin Schreiber, Brian C. Schreiber, and David L. Schreiber, t/d/b/a S & S Land Company *v.* Tax Claim Bureau of The County of Butler and Robert C. Raida and Joanna R. Raida and James Wesley Newkirk. Robert C. Raida and Joanna R. Raida, his wife, Appellants.

Marvin Schreiber, Brian C. Schreiber, and David L. Schreiber, t/d/b/a S & S Land Company *v.* Tax Claim Bureau of The County of Butler and Robert C. Raida and Joanna R. Raida and James Wesley Newkirk. Robert C. Raida and Joanna R. Raida, his wife, Appellants.

Argued March 23, 1988, before Judges DOYLE and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*James P. Coulter, Dillon, McCandless & King,* for appellants, Robert C. Raida and Joanna R. Raida, his wife.

*William C. Robinson, Henninger & Robinson,* for appellees, Marvin Schreiber, Brian C. Schreiber and David L. Schreiber, t/d/b/a S & S Land Company.

*Frank P. Krizner,* for appellee, Tax Claim Bureau of Butler County.

*J. Michael McCague, D. S. Mazzotta & Associates, P.C.,* for appellee, James Wesley Newkirk.

OPINION BY SENIOR JUDGE BARBIERI, July 13, 1988:

Robert C. Raida and Joanna R. Raida appeal an order of the Butler County Court of Common Pleas setting aside tax sales and a subsequent order by the same court re-affirming its prior order on reconsideration.

On May, 1, 1980, S & S Land Company purchased a tract of land in Adams Township, Butler County for $12,000.00 and on May 5, 1980, executed a mortgage to James Wesley Newkirk, Intervenor herein, in the amount of $69,500.00. The property contained $78,000.00 worth of timber which the purchasers did not consider to be real estate, so the deed did not reflect the actual $90,000.00 consideration for the sale of the property.

S & S Land Company is a partnership consisting of three brothers, Marvin Schreiber, Brian C. Schreiber, and David L. Schreiber. Marvin Schreiber and Brian Schreiber are attorneys practicing together as Schreiber and Schreiber. All three Schreiber brothers executed

the mortgage agreement which was subsequently recorded in the Office of the Recorder of Deeds of Butler County. School taxes on the property were not paid for 1980 and the county, township, and school taxes were not paid for 1981.

The address of the grantee, S & S Land Company, is noted on the deed for the property as 3624 Mellon Bank Building, Pittsburgh, Pennsylvania 15219. In April of 1981, the address of S & S Land Company changed to 1360 Old Freeport Road, Pittsburgh, Pennsylvania 15238, when Schreiber and Schreiber moved its law office to this location.

In August of 1982, the Butler County Tax Claim Bureau (Bureau) notified S & S Land Company that its property was scheduled for a public tax sale in light of the 1980 and 1981 tax deliquencies. The Bureau sent the notice to the 3624 Mellon Bank Building address noted on the deed but it was forwarded to S & S Land Company's new address at 1360 Old Freeport Road.

By way of a letter dated September 8, 1982, Marvin Schreiber sent the Bureau a certified check for $521.82 to satisfy the tax delinquencies on the property. The check was drawn against the account of Schreiber and Schreiber. Along with the check, Marvin Schreiber sent a certified letter to the Bureau on Schreiber and Schreiber letterhead bearing the new address at 1360 Old Freeport Road. The letter stated in pertinent part:

> This payment is made to satisfy liened taxes for 1980 and 1981 for *my* property in Adams Township and referred to in the Notice of Public Sale, a copy of which I also enclose herewith.
>
> Also, please make note of my current place of business, as set forth above. As I told the clerk who told me that the above amount was required to satisfy the liened taxes, we moved to this location on April 30, 1981.

(Emphasis added.)

Although Marvin Schreiber sent this letter certified mail and the return receipt[1] was signed by a Bureau employee, the Bureau failed to note the change of address in its record.

After 1982, Appellees received no tax cards on the property. The 1982 taxes on the property became delinquent. Despite having received Marvin Schreiber's letter of September 8, 1982, the Bureau sent a notice of this delinquency to S & S Land Company at 3624 Mellon Bank Building. This notice was returned unclaimed and the notice of delinquency was posted on the property.

The Bureau sent a notice that the property would be sold at a public tax sale, to S & S Land Company at the 3624 Mellon Bank Building address. This notice was also returned as undeliverable. In July of 1984, notice of the public tax sale was posted on the property. A second notice of the impending sale was sent to S & S Land Company at the same incorrect address and was once again returned to the Bureau. The Bureau made inquiries of the local tax collector and the Butler County Assessment Office as to whether S & S Land Company had changed its address but neither office had received a change of address from the property owner. The mortgagee, James W. Newkirk received no delinquent tax notices or notice of the public tax sale.[2]

The public sale was advertised and held on September 10, 1984. No bid was received for the property at the upset price of $766.17. In August of 1985, after receiving a bid of $1,119.09 for the property from Appellants, the Bureau filed a petition with the trial court to sell the property pursuant to Section 610 of the Real

---

[1] *See* plaintiff's Exhibit 5 to April 3, 1986 hearing before the trial court.

[2] The Bureau was not required to notify the mortgagee of the 1984 public tax sale as that sale did not divest his interest.

Estate Tax Sale Law (Act).[3] On August 20, 1985, the trial court issued a rule upon all interested parties to show cause why the Bureau should not be permitted to sell the property as requested in the petition. Service of the rule was made by publication in a local newspaper of general circulation and the Butler County Legal Journal. Service was also attempted by certified mail upon Mr. Newkirk, the mortgagee, at the address in Houston, Texas listed on the 1980 mortgage agreement but was returned as undeliverable. In January of 1982, Mr. Newkirk had changed his residence to another location in Houston. His new address was listed in the Houston telephone directory.

By order dated September 30, 1985, the trial court fixed November 6, 1985, as the day for the sale of the property to the highest bidder. Pursuant to this order, advertisement of the sale was made in a local newspaper of general circulation and the Butler County Legal Journal. Service of the notice of the sale was attempted by certified mail upon the mortgagee but as before it was sent to the address on the deed. This notice and a similar notice sent certified mail to Newkirk at the same address from counsel for Appellants were returned as undeliverable. No attempt was made to notify S & S Land Company of the impending sale except by publication. The trial court found that neither S & S Land Company, nor Mr. Newkirk had actual notice of the sale.

By order dated November 6, 1985, the trial court directed the Bureau to convey the property to Appellants for $1,119.09 plus costs. Subsequently, Mr. Raida

---

[3] Act of July 7, 1947, P.L. 1368, *as amended* (Act), 72 P.S. §5860.610. Pursuant to section 610 of the Act, where the upset price was not bid on a property subject to a public tax sale, the Bureau may petition with the appropriate court of common pleas to sell the property free and clear of claims, liens and mortgages.

located Mr. Newkirk in the Houston telephone directory and advised him of the sale which had wiped out his interest.

When Appellees learned of the sale, they sought to set it aside by filing a petition with the trial court and Mr. Newkirk was granted leave to intervene. Although the petition was actually ancillary to the previous statutory proceeding brought under Section 610 of the Act, it was brought under a separate caption and received a new docket number. After two hearings, the court set aside the tax sales, by order dated May 8, 1987. The trial court concluded that the Bureau failed to make reasonable efforts to notify either Appellees or Mr. Newkirk of the respective sales which divested them of their interests in the property. The Raidas filed a document entitled post-trial motions/exceptions with the trial court, as well as filing an appeal with this Court from the order of May 8, 1987. By order dated August 10, 1987, the trial court denied the post-trial motions/exceptions and affirmed its earlier order.[4] The Raidas then filed an appeal with this Court from the trial court's order denying the post-trial motions/exceptions. We consolidated both appeals by order dated October 2, 1987.

Initially we must determine whether it is the trial court's order of May 8, 1987, or the order denying post-trial relief which is properly before us for purposes of appeal.

---

[4] The trial court's order of August 10, 1987, states that it is reaffirming its order of May 8, 1987, on "reconsideration". We believe the trial court's use of the term reconsideration was a misnomer as reconsideration may only be granted upon timely application and an order expressly granting such within the time permitted for the filing of a notice of appeal. Pa. R.A.P. 1701(b)(3). No application for reconsideration was filed with the trial court and no order granting such was filed within thirty days of the order of May 8, 1987.

Pa. R.C.P. 227.1, pertaining to post-trial relief, only applies to civil actions but will be applied to statutory appeals when required by statute or local rule. *Pennsylvania Liquor Control Board v. Willow Grove Veterans Home Association,* 97 Pa. Commonwealth Ct. 391, 509 A.2d 958 (1986).

Pa. R.C.P. 227.1 requiring post-trial motions concerns procedure after a *trial. Schuylkill County Tax Claim Bureau v. Tremont Township,* 104 Pa. Commonwealth Ct. 338, 522 A.2d 102 (1987). In *Schuylkill County,* we held that a petition filed pursuant to Section 613 of the Act[5] was a statutory appeal and that the proceeding in the court of common pleas was a hearing rather than a trial. Therefore, post-trial motions were not properly filed and we quashed the appeal from their denial as untimely. Section 613 of the Act provides that where a property has been up for public sale and no bid was made equal to the upset price, the tax claim bureau may agree to sell the property at private sale. If any interested party or taxing district having a claim against the property is not satisfied with the sale price it may petition the court of common pleas to disapprove the sale. The court shall then hold a hearing on the petition and either confirm or disapprove the sale.

The petition in the case at hand sought to set aside a sale held on a petition for judicial sale brought pursuant to Section 610 of the Act. That Section along with Section 612 of the Act, provides that where a property is not sold at an upset sale, the tax claim bureau may petition the court of common pleas for a judicial sale. After a hearing at which all interested parties may appear and contest the sale, the court may order the property sold free and clear of all claims including tax claims and mortgages. These proceedings were thus initiated in the

---

[5] 72 P.S. §5860.613.

trial court by way of petition ancillary to a statutory proceeding. Therefore, this is not a civil action but rather a statutory appeal. Neither the Act nor the local rules[6] provide that post-trial motions be filed in this instance.

In light of the fact that post-trial motions are not authorized by the Act or local rule, we will quash the appeal from the trial court's order of August 10, 1987 and proceed to address the merits of the appeal from the order of May 8, 1987.

On appeal to this Court from that order, Appellants contend that it made reasonable efforts to serve S & S Land Company with notice of the 1984 sale and met the statutory requirements concerning notice to the mortgagee prior to the second sale. Appellants further contend that the trial court should not have addressed the issues raised by Appellees concerning the validity of the second sale as these issues were not raised in the pleadings.

Appellants maintain that the trial court erred in finding that Marvin Schreiber sent the letter of September 8, 1982, notifying the Bureau of S & S Land Company's new address. A copy of the letter and a return receipt showing the letter was sent to the Bureau certified mail were admitted into evidence. The return receipt was signed by R. Fair on September 10, 1982. Counsel for the Bureau stipulated that R. Fair was authorized to accept mail for the Bureau on Sep-

---

[6] Local rule L109 of the Butler County Court of Common Pleas provides in pertinent part:

> No exceptions or objections shall be filed to orders or decrees entered unless the right to except or object is expressly conferred by act of assembly, local rule, or special order, and all decrees other than those to which exceptions or objections are so allowed shall be final.

Local rule L227.1 only addresses motions for a new trial upon the ground of after discovered evidence.

tember 10, 1982. Therefore, we hold the trial court's finding that the letter of September 8, 1982, was transmitted to the Bureau is supported by substantial record evidence.

Appellants argue further that even if the letter was received it was not enough to put the Bureau on notice that S & S Land Company had changed its address. In support of this argument, Appellants note that the letter was on Schreiber and Schreiber letterhead and signed by Marvin Schreiber, whom it did not know was a partner in S & S Land Company. The check accompanying the letter noted the deed book reference for the property in question and that it was in payment for S & S Land Company. The letter clearly states that the payment is for delinquent taxes on the property in question in Adams Township. Marvin Schreiber specifically noted that the property was his and asked the Bureau to note his new address. We believe this was sufficient to put the Bureau on notice that S & S Land Company had changed its address.

The Bureau contends that it made reasonable attempts to notify S & S Land Company of the public tax sale in September of 1984. The trial court held that although the Bureau apparently complied with that version of the Act at the time in question,[7] the administrative notice procedures in this case violated Appellees' due process rights.

In *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985), our Supreme Court

---

[7] Section 607.1 of the Act, added by way of an amendment dated July 3, 1986, 72 P.S. §5860.607a, requires tax claim bureaus to search county telephone directories, as well as the records of the county tax assessment office, recorder of deeds office and the prothonotary's office to notify parties in interest of impending tax sales whose mailed notices have been returned unsigned or undeliverable.

set aside a tax sale of property which was owned by a partnership. The Court held that where an owner's identity was reasonably ascertainable, actual notice of a scheduled tax sale was required. The Court stated in *Tracy*, at 296, 489 A.2d at 1338-39, that a taxing authority must notify the record owner of property scheduled for tax sale "by personal service or certified mail, *and where the mailed notice has not been delivered because of an inaccurate address*, the authority must make a *reasonable effort* to ascertain the identity and whereabouts of the owner(s)." (Emphasis in original.) The court went on to state that a reasonable effort on the part of the taxing authority in that case would have been to check with the office of the Secretary of the Commonwealth in Harrisburg to determine the identity and addresses of the record owner.[8]

In *Rossi v. Indiana County Tax Claim Bureau*, 90 Pa. Commonwealth Ct. 255, 494 A.2d 526 (1985), we set aside a tax sale of property where notice of the proposed sale was sent to a record owner at the wrong address. In that case, we interpreted the rule in *Tracy* to require that at a minimum, where a mailed notice of a tax sale is returned unclaimed, the taxing authority must do *something* to try and locate the property owner before automatically mailing the second notice to the same address.

In the case at hand, the Bureau sent two notices of the 1984 public tax sale to S & S Land Company to the incorrect address. Prior to the sale, the Bureau checked with the local tax collector and the Butler County

---

[8] Appellants argue that it is the Schreibers' fault they were not informed of the tax sale because S & S Land Company did not register its fictitious name with the Secretary of the Commonwealth. However, as the trial court notes, there is no record evidence that the Bureau ever conducted a search of the fictitious name registry for S & S Land Company.

Assessment Office to see if they had a change of address for S & S Land Company. Although they did not, the Bureau itself had received a change of address for the property owner from Marvin Schreiber in September of 1982, but apparently failed to note it. Even if the Bureau had not received a change of address for the record owner, we agree with the trial court's conclusion that the Bureau failed to make a reasonable effort to locate the non-resident record owners in this case. As suggested by the trial court, it would have been a relatively simple matter for the Bureau to check the mortgage records. The individual Schreiber brothers all signed the mortgage agreement. From there the Bureau could have checked the Pittsburgh telephone directory. Alternatively, the Bureau could have checked the Pittsburgh telephone directory for Schreiber and Schreiber.

We do not hold that a taxing authority is required to search countless telephone directories or other records to locate record owners of property scheduled for tax sale. However, the non-resident property owners could have been located quite easily in the manner we have suggested. Checking the mortgage agreement would not have placed an unreasonable burden on the taxing authority in this case. It is interesting to note that apparently the Legislature would agree as the current version of Section 601(a) of the Act requires a taxing authority to check the dockets and indices of the recorder of deeds office in an effort to locate record owners prior to a tax sale.

We do not believe that the Bureau made a reasonable effort to notify the mortgagee prior to the 1985 sale to Appellants. The Rule to Show Cause dated August 20, 1985, and the notice of the scheduled sale were mailed to Mr. Newkirk at his last known address. Although *Tracy* and *Rossi* involved notice to record owners, our Supreme Court in *Tracy* bases its opinion

on the U.S. Supreme Court's decision in *Mennonite Board of Missions v. Adams,* 462 U.S. 791 (1983). In that case, the United States Supreme Court noted that a government body is obliged to employ reasonable efforts to discover the identity and address of a mortgagee. The Bureau could have easily located Mr. Newkirk through the Houston telephone directory and in fact Mr. Raida did just that following the sale. In any event, the second sale was brought pursuant to Section 610 of the Act which permits a court ordered sale to the highest bidder only where the upset price was not bid at the first tax sale. Therefore, if the first sale was invalid, the second sale is as well.

Appellants contend that the trial court erred in addressing the validity of the second tax sale as these issues were not raised in the pleadings. A review of the pleadings reveals this argument is meritless. Appellees clearly raise the validity of the second sale in paragraph 13 of their Petition to Set Aside Tax Sale and Private Sale of Property and the mortgagee clearly raises the issue in his petition as well.

We find that the Bureau failed to make a reasonable effort to notify the Appellees and the mortgagee of the tax sales in this case which divested them of their rights to the property in question.

As our Supreme Court noted in *Tracy* at 297, 489 A.2d at 1339:

> Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the nonpayment of taxes. . . . As this Court stated in Hess v. Westerwick, 'the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes.' 366 Pa. 90, 98, 76 A.2d 745, 748 (1950).

We agree with the trial court that the tax sales in this case must be set aside. Accordingly, the order of the trial court dated May 8, 1987, invalidating the 1984 upset sale and the 1985 sale of the property in question is affirmed.

ORDER

AND NOW, this 13th day of July, 1988, the order of the Butler County Court of Common Pleas dated May 8, 1987, at Miscellaneous Docket No. 86-022 is affirmed. Appellants' appeal from the order of the Butler County Court of Common Pleas dated August 10, 1987 at Misc. Docket No. 86-022 is dismissed as untimely filed.