In re SALE OF REAL ESTATE BY MONTGOMERY TAX CLAIM BUREAU FOR 1997 DELINQUENT TAXES.

Exceptions of JUL Realty Corp, Parcel # 12–00–02740–00–2 and Exceptions of Mary Price Parcel # 40–00–43312–00–1.

### Appeal of JUL Realty Corp and Mary Price.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 8, 2003.
Decided Nov. 3, 2003.
Reargument En Banc Denied Dec. 29, 2003.

---

Marshall L. Grabois, Ambler, for appellants.

Michael P. Coughlin, Blue Bell, for appellees.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and LEADBETTER, Judge, and COHN, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Mary Price[1] and JUL Realty Corporation (Taxpayers) appeal the order of the Court of Common Pleas of Montgomery County denying their exceptions to confirmation of the tax upset sale of the real property located at 394 Old Gulph Road and 145 Narberth Avenue in Lower Merion Township for delinquent taxes.

Mary Price, owner of a home at the Old Gulph Road address, is the sole shareholder and owner of JUL Realty Corporation, which owned an office building at the Narberth Avenue address. The exceptions filed for both parcels averred that the tax sale was conducted on September 13, 1999, that notices to the Taxpayer indicated that the sale was scheduled for September 15, 1999, that the Montgomery County Tax Claim Bureau failed to properly post the property, and that the Taxpayer appeared on September 15, 1999 to pay the delinquent taxes and was told that the parcel was sold on September 13, 1999. Michael Singer, Michael Candido, and Homeowner's Concepts, Inc., and Irvin Povlow, purchasers of the properties, intervened and filed answers.

The parties presented evidence with respect to both properties at a January 23, 2001 hearing before the trial court. Tax Claim Bureau Supervisor Sharon Hetrick testified from her records that the tax upset sale of the properties in question was advertised, the proper notices sent by certified and first-class mail, that the properties were posted, and that the owner occupant of the properties was personally served with notice of the sale. With respect to posting and personal service, the Tax Claim Bureau introduced into evidence the sheriff's affidavits of service.

With respect to the residential property on Old Gulph Road, Sheriff's Deputy James Conway testified from his daily log that he posted the front door of the property at 7:45 a.m. on July 27, 1999 using scotch tape. He testified that he attempted to personally serve Ms. Price and on the affidavit of service he wrote, "Would not come to door. Left as a refusal." On direct examination, Conway testified that he knocked on the front door and then went to the side-door through which he observed Mary Price in the kitchen, but that she did not answer the door. On cross-examination, Conway acknowledged that in a June 8, 2000 deposition, he testified 1) that he knocked on the front door, through which he observed Ms. Price in her kitchen and 2) that he observed Ms. Price's yellow Cadillac in her driveway.

---

1. During the pendency of this case, Mary Price died, and by order dated August 13, 2003, this court granted an application to substitute executor John A. Price for Mary Price as a party pursuant to R.A.P. 502(a).

He acknowledged on cross-examination he did not believe that Ms. Price saw or heard him knocking because if she had she would have answered the door. (Transcript, p. 93.)

With respect to the commercial property on Narberth Avenue, Deputy Conway testified from his daily log that he arrived at the property at 8:30 a.m. on July 27, 1999 and posted notice of the tax sale on the front door. He stated that as he was about to enter the premises he saw Ms. Price pull up behind his vehicle and that he then personally served her with notice of the tax sale. On cross-examination, Conway acknowledged that during June 8, 2000 deposition he stated at one point that he posted the notice and then immediately removed it and handed it to Ms. Price when he effected personal service of the tax sale notice and at another point he stated that when Ms. Price pulled up behind his vehicle he served her with both the posted notice and the personal service notice. Conway acknowledged that at the time in question his practice was to hand both notices to the property owner if the owner answered his knock or was otherwise present at the premises. (Transcript, p. 110–111.)

Mary Price testified on her own behalf as follows. She has lived at the Old Gulph Road property for 38 years, and that there is no mortgage on the home. A woman of 75 years, she generally pays her bills by check, in person. She acknowledged receiving notice of the tax sale by mail and had the money to pay the delinquent taxes, as it was her habit to pay the taxes every other year. From her copies of the notices, which were faintly printed, she believed the sale date to be September 15, 1999, and she went to Norristown, to the Tax Claim Bureau, on that date to pay the taxes in full. Had she known that the sale was September 13, 1999, she would have gone to Norristown to pay the taxes on that date.

As for July 27, 1999, the day Deputy Conway allegedly posted notice and personally served her with notice of the tax sale, Ms. Price testified that she was not home at 7:30 a.m. on that day because she attends mass at 7:30 a.m. every day and misses mass only rarely, as on days when snow storms prevent her from exiting her driveway. She testified that from her front door, one cannot see into her kitchen. She testified that she remembered meeting Conway in front of the Narberth Avenue property and that he handed her one or more documents, but he did not go up to the front door, and neither she nor her tenants saw anything posted on the front door of the property. She acknowledged that she drives a white Lincoln and never owned a yellow Cadillac. She testified that when she returned home at the end of the day, she did not see anything posted on the front door.

Based on the evidence presented, the trial court found that the sale date on the required notices was legible to a person with normal or normally corrected vision. It found that Deputy Conway filled out affidavits of personal service and posting for both properties. The court concluded on the basis of *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1 (1965), that the sheriff's affidavit is conclusive and immune from attack from extrinsic evidence. Having concluded that the statutory requirements were met in this case, the trial court denied the Taxpayers' exceptions and confirmed the sale of the properties.

■ On appeal, the Taxpayers raise the following issues: 1) whether the trial court abused its discretion and erred when it concluded that notices of the sale were properly posted on the properties and personally served on Ms. Price and bore a legible sale date, and 2) whether the tax

sale should be set aside because the successful bidders did not provide certification that they were not delinquent in real estate taxes or municipal utility bills. Our review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law, or rendered a decision unsupported by the evidence. *Hunter v. Washington County Tax Bureau*, 729 A.2d 142 (Pa.Cmwlth.1999).

■ Although a presumption of regularity attaches to tax sales, a property owner overcomes the presumption whenever he or she states a prima facie challenge to the sale based on the agency's compliance with statutory tax sale requirements. *Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285 (Pa.Cmwlth. 1996). Because of the fundamental importance of the due process considerations that arise when the government subjects a citizen's property to forfeiture for nonpayment of taxes, the agency that has sold the property bears the burden of proving that it complied with statutory notice requirements when property owner mounts such a prima facie challenge. *Id.*

■ Section 602 of the Real Estate Tax Sale Law (Tax Sale Law),[2] 72 P.S. § 5860.602, imposes a series of notification requirements—by publication, certified mail, posting, and in some cases personal service—before a county tax claim bureau can sell real property for delinquent taxes. The Law's notice provisions are to be strictly construed, and the tax sale is void if any of the required types of notice is defective. *Ban v. Tax Claim Bureau of Washington County*, 698 A.2d 1386 (Pa. Cmwlth.1997). Actual notice of a pending tax sale waives strict compliance with the notice requirements. *Stanford–Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214 (Pa.Cmwlth.2003). At issue in this case are the personal service and posting requirements.

■ Section 601(a)(3) of the Tax Sale Law provides in unequivocal terms that no owner-occupied property may be sold unless the owner has been personally served with notice of the sale. 72 P.S. § 5860.601(a)(3). As relied upon by the trial court, *Hollinger* states, "in the absence of fraud, the return of service of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence." 416 Pa. at 476, 206 A.2d at 3. The conclusive nature of the sheriff's return of service is limited to the facts stated in the return of which the sheriff has personal knowledge. *Id.* The rule of conclusiveness is based on the presumption that the sheriff acted with propriety in the conduct of his official duties. *Id.* "The presumption is rebuttable and must yield if the evidence indicates the contrary." *In re Upset Sale, Tax Claim Bureau of Montgomery County*, 68 Pa. Cmwlth. 180, 448 A.2d 696, 699 (1982).

■ In the instant case, the trial court found only that Deputy Conway filled out the affidavits of service on July 27, 1999; it made no findings as to whether service was actually effected. In our estimation (without making credibility determination), Deputy Conway's testimony constitutes evidence that contradicts the affidavits.

The affidavit of personal service for the residential property states, "Would not come to door, left as refused." On its face, the affidavit does not demonstrate that the deputy sheriff effected personal service, and when considered in its entirety, Deputy Conway's testimony does not support a finding that personal service was made or that Ms. Price refused service. Conway changed his testimony that he saw Ms.

2. Act of July 7, 1947, P.L. 1368, *as amended.*

Price in her kitchen when he peered through the front door when he was confronted with the fact that the kitchen was not visible from the front door, and on cross-examination he stated his belief that if Ms. Price had heard him knocking she would have answered the door. The evidence does not support a conclusion that Ms. Price was personally served with notice of the tax sale at the Old Gulph Road residence.

 Similarly, the affidavits of service state that notice was posted and served at the Narberth Avenue property, but Deputy Conway's testimony indicates otherwise. He acknowledged that if the property owner was present at the premises, his practice was to hand both the posting notice and personal service notice to the property owner, and stated that when he saw Ms. Price pull up behind him, he handed her both of the notices. Because a property is not properly posted within the meaning of the Tax Sale Law unless it is sufficient to notify both the owner and the public at large of the pending sale, posting does not satisfy the statutory requirement when the notice is not conspicuous such that it will be seen by the public. *Ban; In re Upset Tax Sale of September 10, 1990,* 147 Pa.Cmwlth. 52, 606 A.2d 1255 (1992). The evidence does not support a finding that the Narberth Avenue property was properly posted within the meaning of the Law.

Although the trial court found that the sale date on the notices was legible to a person with normal or normally corrected vision, it also found that Ms. Price wore reading glasses and that the date on the notices was faint. Given the noncompliance with the posting and personal service notice requirements, the unclear sale date on the notices, and the fact that Ms. Price appeared in person to pay the overdue taxes in full on September 15, 1999, the

date she thought the notices bore, we must conclude that the Tax Claim Bureau failed to meet the statutory notice requirements and failed to provide Ms. Price with adequate notice of the sale date.

 The purpose of the tax sale law is to collect overdue taxes, not to punish taxpayers who omit through oversight or error to pay their taxes, *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985) (quoting *Ross Appeal,* 366 Pa. 100, 107, 76 A.2d 749, 753 (1950)), and not to permit real estate speculators to obtain the property of taxpayers who are willing and able to pay their taxes. The taxpayer in this case, Ms. Price, has not proven herself to be a willful, persistent, and long-standing tax delinquent. Given the facts of this case, the properties in question should never have been exposed for tax sale.

 The Taxpayers' claim that the buyers did not certify that they were not delinquent in payment of real estate taxes or municipal utility bills was not raised before the trial court, and therefore, it was waived.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 3rd day of November 2003, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is reversed.

### DISSENTING OPINION BY Judge COHN.

Respectfully, I dissent. My interpretation of what constitutes the factual findings in this case leads me to a different conclusion than that of the majority. Accordingly, I reiterate the critical facts as I perceive them to be and then apply them to the law, noting at the outset that for the

past twenty years, Price has paid the real estate taxes on both properties every other year; that is, she allows them to accumulate for two years before paying them.

### Notice Regarding the Commercial Property

On April 17, 1998, the Montgomery County Tax Claim Bureau (Bureau) sent a "Notice of Return and Claim" to JUL Realty by certified mail, return receipt requested, showing delinquent real estate taxes for the tax year 1997 in the amount of $8455.31. On April 1, 1999, the Bureau sent a "Notice of Return and Claim" to JUL Realty by certified mail, return receipt requested, showing delinquent real estate taxes for the tax year 1998 in the amount of $7411.60. On May 28, 1999, the Bureau sent notice to JUL Realty by certified mail of the tax sale. The notice indicated that the Commercial Property would be sold at a tax sale on September 13, 1999. Price admits that she received the above notices. However, when she read the date of the tax sale on the certified mail notice, she thought it was September 15, 1999, instead of September 13, 1999. Price pointed out that she is 73 years old and wears reading glasses. She did not recall ever reviewing the notices while wearing her glasses. The trial court found, as a matter of fact, that, although the print on the notices was somewhat light, the date of the tax sale on the notice by certified mail was legible to a person with normal or normally-corrected vision.

Notice by first class mail was sent to JUL Realty on August 27, 1999.[1] Price acknowledged that she received this notice as well. Price produced the original notice by first class mail at the hearing. She did

not testify that she had misread the date. The trial court found, as a matter of fact, that, although the print was somewhat light, the date of the tax sale on the notice by regular mail was legible to a person with normal or normally-corrected vision.

Notice of the tax sale of the Commercial Property was published once on August 5, 1999, in *The Norristown Times Herald*, *The Pottstown Mercury*, and *The Montgomery County Law Reporter*.

The Sheriff's Department in Montgomery County is responsible for serving personal notice and posted notice. Deputy James Conway handled the posting and personal service notices. After posting a property or personally serving a property owner with a tax sale notice, Deputy Conway immediately fills out an affidavit reflecting the circumstances of the posting or personal service. With regard to the Commercial Property, Deputy Conway's affidavit stated that on July 27, 1999, at approximately 8:30 a.m., he visited the Commercial Property and posted the property and personally served Price with notice of the tax sale.

### Notice Regarding the Residential Property

On May 28, 1999, the Bureau sent notice of the tax sale of the Residential Property to Price by certified mail. The notice indicated that the Residential Property would be sold on September 13, 1999. Price admits that she received the notice by certified mail. However, again, Price did not have on her reading glasses and she thought that the date of the tax sale was September 15, 1999, instead of September 13, 1999. The trial court found, as a mat-

---

**1.** Purchasers point out that first class mail notice is only required if the Bureau does not receive the certified mail "return receipt" bearing the owner's signature. *See* Section 602(e)(2) of the Real Estate Tax Sale Law, Act

of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. 5860.602(e)(2). Here, there is no dispute that certified mail was accomplished. The Bureau, nevertheless, sent the first class mail notice also.

ter of fact, that the notice, although in somewhat light print, was legible to a person with normal or normally-corrected vision.

Although notice by regular mail is not required by the statute, the Bureau sent such notice on August 27, 1999. This notice also indicated that the Residential Property would be sold at a tax upset sale on September 13, 1999. Price admits that she received notice by regular mail. Again, she did not testify that she misread the tax sale date on this notice. The trial court, again, found as a matter of fact that the date of the tax sale on the regular mail notice was legible to a person with normal or normally-corrected vision.

Notice of the tax sale of the Residential Property was published once on August 5, 1999, in the identical publications in which publication notice of the Commercial Property was achieved.

Deputy Conway also handled the posting and personal service of the tax sale of the Residential Property. According to his affidavit, Deputy Conway posted a notice of tax sale on the main front door of the Residential Property at 7:45 a.m. on July 27, 1999. Deputy Conway also knocked on the main front door so that he could personally serve Price with notice of the tax sale, but received no response. Deputy Conway then went to the kitchen door and knocked there. He saw Price through the door when he knocked, but she did not respond. Deputy Conway then posted the personal service copy of the tax sale notice on the main front door and returned an Affidavit of Service that stated Price "would not come to the door, left as a refusal."

Both properties were sold at a tax sale on September 13, 1999. Price attempted to pay the delinquent taxes on September 15, 1999. Both properties were purchased by Michael Candidio, Irvin E. Povlow, Michael Singer and Homeowners Concepts, Inc. (Purchasers). Price filed exceptions to the tax sale, which the trial court denied following hearing. This appeal followed.[2]

### A. Commercial Property

Price argues and the majority agrees that the tax sale should be set aside because posted notice of the tax sale of the Commercial Property was improper.

Purchasers contend that the trial court was correct in determining that posted notice was proper and cannot be challenged because the Bureau submitted the sheriff's affidavit. They assert that the sheriff's affidavit is conclusive proof of posting and cannot be collaterally attacked. The sheriff's affidavit stated that the Commercial Property was posted on July 27, 1999, at 8:30 a.m., and is signed by Deputy Conway.

In reaching its decision, the trial court relied on *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1 (1965), for the proposition that the information contained in the sheriff's affidavit is conclusive and cannot be collaterally attacked. The trial court, thus, did not permit Price to challenge the affidavit. The majority correctly states the legal principles in *Hollinger* as to the conclusive·nature of the sheriff's affidavit and the manner in which that conclusiveness can be rebutted. But, it then goes on to state, "Deputy Conway's.testimony constitutes evidence that contradicts the affidavits." Slip op. p. 6. It is here that I part

---

**2.** The standard of review in tax sale cases is limited to whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Matter of the Tax Sales by the*

*Tax Claim Bureau of Dauphin County*, 651 A.2d 1157 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 544 Pa. 650, 664 A.2d 978 (1995).

company with the majority. First, in deciding that Sheriff Conway's testimony constituted such evidence, the majority has made a crucial *credibility* decision, which we are not permitted to do. Second, *Hollinger* must be read in context. Although the case is instructive, generally, in explaining the conclusiveness of documents executed by public officers in the course of their duties, there is a line of cases that addresses, more specifically, the conclusiveness of a sheriff's affidavit in the context of tax sales. In such cases, there exists a *prima facie* presumption of the regularity of the acts of public officers, until the contrary appears. *Thomas v. Montgomery County Tax Claim Bureau,* 123 Pa.Cmwlth. 371, 553 A.2d 1044 (1989), *petition for allowance of appeal denied,* 523 Pa. 652, 567 A.2d 655 (1989). A property owner can overcome the presumption "[b]y filing exceptions to a tax sale, averring that the statutory notice provisions were not complied with, [and thus creating] a contrary appearance." *Ali v. Montgomery County Tax Claim Bureau,* 124 Pa.Cmwlth. 557, 557 A.2d 35, 37 (1989). Then the tax claim bureau, or a purchaser arguing that the tax sale was proper, has the burden of proving that the tax claim bureau complied with the notice provisions. *Upset Price Tax Sale of September 10, 1990 (Sortino) v. Delaware County Tax Claim Bureau,* 147 Pa.Cmwlth.52, 606 A.2d 1255 (1992). I believe these cases are more applicable to the current matter and provide the legal framework that should be used here.

Applying this law to the case *sub judice,* I note that Price filed exceptions to the tax sale of the Commercial Property and averred that posted notice was not achieved in compliance with the statutory provisions as set forth in the Law. By doing so, Price raised a contrary appearance as to the information stated in the sheriff's affidavit. Consequently, the Bureau and Purchasers then had the burden of showing compliance. They submitted the affidavit and called Deputy Conway to testify on this issue. However, because the trial court determined that the affidavit was conclusive, *it made no findings of fact or credibility determinations as to Deputy Conway's testimony.*

At the hearing on January 23, 2001, almost eighteen months after the events, Deputy Conway testified, on direct examination, that he posted the notice of the tax sale on the front door of the building at the Commercial Property. (N.T., January 23, 2001 Hearing, p. 105 .) He next stated that, upon seeing Price drive up in her car, he had a brief conversation with her and then handed her the personal service notice.[3] (N.T., January 23, 2001 Hearing, p. 107.) On cross-examination, Deputy Conway stated that he taped the notice on the front door. (N.T., January 23, 2001 Hearing, p. 113.) Upon further questioning, he said that when he saw Price drive up in her car to the Commercial Property, he might have taken the posted notice off the door and handed both the posted and personal service notices of the impending tax sale of the Commercial Property to her, or she might have taken the notice off. (N.T., January 23, 2001 Hearing, p. 119–120.) Specifically, he states: "In this case, I went up there, I posted the property, turned around and I saw Mary [Price].

---

**3.** Personal service notice is required to be served on a owner-occupant of a property pursuant to Section 601 of the Law, 72 P.S. § 5860.601; that is, personal service notice must be served on the owner residing at the property. The Commercial Property, not being a residence, does not require that personal service notice be served on Price. Rather, the Bureau is only required to show that certified mail notice, published notice, and posted notice were accomplished pursuant to Section 602 of Law.

Whether I gave her the posted copy, took it off the door, I'm not one hundred percent. She did get both copies." (N.T., January 23, 2001 Hearing, p. 110.) And later, "I went up and I posted it, turned and saw her, so I took it off and gave her both copies. She was served with both of them." (N.T., January 23, 2001 Hearing, p. 113.) He testified that he knows Mary Price because he has served her numerous times in the past. (Deposition of Deputy Conway, p. 8).

Given the fact that Deputy Conway's testimony is not conclusive, I believe that it is solely within the trial court's role as a fact finder to determine exactly what occurred. Over time memories fade, and extensive cross examination about events that occurred many months before can create confusion. Particularly, in this type of situation, where Deputy Conway testified that he can serve four hundred tax sale notices during a tax sale season, it can be difficult for a sheriff's deputy to remember every detail of a particular service. This was one of the concerns underlying the *Hollinger* rule because it is unrealistic to demand perfect recall of one particular occurrence of an activity that is routinely, and repetitively, performed by a public officer in the course of his official duties.

It is, therefore, the responsibility of the trial court, as fact finder, to determine whether Deputy Conway's affidavit, which was executed contemporaneously with the events, is accurate, or which version of his subsequent testimony most credibly sets out what occurred and, therefore, whether notice was properly given.

## B. Residential Property

Price also argues that the tax sale of the Residential Property should be set aside because personal service notice was improper. Purchasers again contend that the sheriff's affidavit, executed by Deputy Conway as to personal service notice, is conclusive evidence that personal service was made. However, based on the above discussion, the sheriff's affidavit is not, in my view, conclusive because Price raised a contrary appearance when she filed her exceptions to the tax sale. *Ali.* Consequently, Purchasers were required to show that the Bureau complied with the statutory requirements, and attempted to do so with the affidavit and testimony of Deputy Conway. The trial court, again, determined that the sheriff's affidavit was conclusive as to whether personal service notice was made pursuant to *Hollinger.* However, based on the above discussion of the law pertaining to sheriff's affidavits in the context of a tax sale case, it is, in my view, necessary for the trial court to evaluate the testimony of Deputy Conway and Price, and make credibility determinations in reaching its decision.

On the affidavit, Deputy Conway had written "would not come to the door, left as a refusal." (Affidavit of Upset Sale Personal Service, Trial Exhibit R6.) During his deposition on June 8, 2000, nearly 11 months after the date of posting, Deputy Conway stated that he saw Mrs. Price in her kitchen, that he knew who she was because he had served her numerous times in the past, that her car was in the driveway, that he knocked three times and, that when she did not come to the door, he posted the notice and made the notations on the affidavit. (Deposition of Deputy Conway, pp. 8–9.) He also stated that he physically saw her turn around when he knocked, but did not remember whether she made eye contact with him. (Deposition of Deputy Conway, p. 10.) During the hearing on January 23, 2001, nearly 18 months after the date of posting, Deputy Conway testified that he remembered the property very well because he had been there numerous times in the past to serve

tax notices, as well as other civil actions. In the case *sub judice,* he attached the notice to the front door with tape, and was certain it was Mary Price he saw that day. (N.T., January 23, 2001 Hearing, pp. 76, 81–82.) During cross examination, he stated that he knocked on the door of the Residential Property and saw Price through the door. (N.T., January 23, 2001 Hearing, p. 92.) He did not recall whether Price made eye contact with him or not when he knocked on the door. (N.T., January 23, 2001 Hearing, p. 92.) Ultimately, Price never responded to his knock on the door. After considerable cross examination, Deputy Conway finally stated that "I don't believe she saw me or heard me either way. Because, if she did, she would have came [sic] and answered the door." (N.T., January 23, 2001 Hearing, p. 93.) Because he received no response, Deputy Conway placed the personal service notice on the door next to the posted notice and indicated on the affidavit that Price "would not come to the door, left as a refusal." (Affidavit of Upset Sale Personal Service, Trial Exhibit R6.) He also indicated that service was made at 7:45 a.m. on July 27, 1999. *Id.* Price, on the other hand, testified that she was out of her home at the time, and that he, therefore, could not have seen her.

I believe that it is within the trial court's role as a fact finder to determine exactly what occurred when Deputy Conway attempted to serve personal service notice on Price. It is possible that the trial court will believe Deputy Conway's affidavit, which was contemporaneous with the events, or his testimony which evidences a refusal; it is also possible that the trial court will believe that the Deputy did not effectuate personal service. Absent these findings, I believe the Court is unable to complete meaningful appellate review. Consequently, I would vacate the order and remand to the trial court to consider

the testimony of Deputy Conway and make credibility determinations in reaching a decision on whether the notices at issue here were properly effected.

Accordingly, I dissent.

Judge PELLEGRINI and Judge LEADBETTER join in this dissenting opinion.