In re PUBLIC SALE OF PROPERTIES Pursuant to Section 610 and Section 903(b) of the Real Estate Tax Sale Law,

**2930 West 9th Street.**

**Appeal of: Phillip Tappenden.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2003.
Decided Jan. 22, 2004.

Michael P. Dignazio, Media, for appellant.

Leo A. Hackett, Media, for appellee, Chester–Upland School District.

John M. Hickey, Media, for appellee, W. Linder.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Philip Tappenden (Appellant) appeals from the decision and order of the Court of Common Pleas of Delaware County (trial court), which granted a petition to set aside a judicial sale filed by William Linder (Linder), the City of Chester, and Chester Upland School District. We affirm.

Linder is the record owner of property located at 2930 West Ninth Street, Chester, Delaware County (Property), where he operates a printing business. Taxes on the Property were delinquent for the years 1997, 1998, 1999, 2000 and 2001. The Delaware County Tax Claim Bureau (Tax Claim Bureau) exposed the Property to an upset sale, but no bids were received. The Bureau then filed a Petition for Public Sale of the Property, and in response, the trial court held a hearing on April 22, 2002, at which any interested party was permitted to show why the Property should not be exposed for judicial sale. Linder was notified of the hearing, but he did not appear. Accordingly, the trial court ordered the Property to be exposed to judicial sale. After receiving notice of the judicial sale, however, Linder contacted the City of Chester, which, in turn, directed him to contact its special counsel for the collection of the real estate taxes, Leo A. Hackett, Esq. (Hackett).

After several discussions, on May 16, 2002, Linder entered into an agreement (Agreement) with the City of Chester and the Chester–Upland School District (collectively, Taxing Districts) to pay the delinquent school and city taxes he owed. Toward the $49,246.22 balance owed on delinquent city and school taxes, Linder made a payment of $2,125. He agreed to make another $2,125 payment on May 29, 2002; and thereafter, a monthly payment (in varying amounts) until July 1, 2003, when the total delinquency with interest would be settled.

In accordance with the Agreement, the Taxing Districts prepared a letter to the Tax Claim Bureau instructing it to remove the Property from the judicial sale list set for June 6, 2002. Hackett gave Linder a copy of this letter and directed him to hand deliver it to the Tax Claim Bureau and to pay the delinquent county real estate taxes. Linder followed these instructions, and on May 16, 2002, he paid his delinquent county real estate taxes in full. However, the Tax Claim Bureau did not remove the Property from the judicial sale list, and on June 6, 2002, the Property was sold to Appellant for $15,000.

On June 25, 2002, the Taxing Districts and Linder jointly filed a petition to set aside the judicial sale. They asserted that the Tax Claim Bureau was without authority to proceed with a judicial sale of the Property after receiving the Taxing Districts' direction to remove the Property from the judicial sale list. Appellant filed preliminary objections challenging the capacity of the Taxing Districts to petition to set aside the judicial sale in light of the fact that they were neither record owners nor lien creditors at the time of the sale.

The trial court overruled the preliminary objections of the Appellant and scheduled an evidentiary hearing on the petition. At the hearing, Linder confirmed that in spite of receiving notice of the April 22, 2002 hearing, he did not take action until May when he sought out Hackett to negotiate a schedule for payment of the delinquent taxes. Linder testified that after learning that the Property had been

sold by the Tax Claim Bureau, he stopped making the payments provided in the Agreement.

The trial court noted that it was an extraordinary situation where, as here, both the record owner of the property and the taxing authorities petitioned to set aside the judicial sale. The trial court held that the Tax Claim Bureau, "[a]s agent for the taxing authorities, ... was obligated to follow the directions of the taxing authorities regarding the exposure of the subject property to Judicial Sale and nothing in the Real Estate Tax Sale Law or other authority ... explicitly holds otherwise." Trial Court Opinion at 5. Accordingly, the trial court set aside the judicial sale, and a timely appeal to this Court followed.[1]

On appeal, Appellant raises three issues. First, he challenges the Taxing Districts' authority to direct the Tax Claim Bureau to remove the Property from exposure to judicial sale. Second, Appellant contends that the existence of the negotiated settlement of Linder's tax obligations did not give the trial court authority to set aside or even stay the judicial sale of the Property. Third, Appellant contends that the trial court abused its discretion in determining that the Tax Claim Bureau assured Linder that his Property would be delisted from the scheduled judicial sale.

1. Our review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision unsupported by the evidence. *In re: 1999 Upset Sale of Real Estate*, 811 A.2d 85, 87 n. 1 (Pa.Cmwlth.2002).

2. *See* Section 601(c) of The Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended* by the Act of October 18, 2000, P.L. 609, 72 P.S. § 5860.601(c), which provides as follows:
(c) The taxing authorities of the county and of any political subdivision in the county may jointly petition the court of common pleas of the county to stay the sale of prop-

Appellant first argues that once a judicial sale has been ordered, it cannot be stopped except by court order. In support, he notes that upset sales may be stayed only by application to the court.[2] Since the statute with respect to judicial sales is silent on the stay of judicial sales, Appellant reasons that judicial sales may not be stayed. We disagree.

The Real Estate Tax Sale Law does not prescribe a procedure for removing a property from a judicial sale. However, Section 208 of the Real Estate Tax Sale Law gives a tax claim bureau broad authority for "the management and disposition of property in accordance with the provisions of this act" in meeting its obligation to collect taxes. 72 P.S. § 5860.208. Logically, "management and disposition" includes the ability to remove a property from a scheduled judicial tax sale when to do so will advance the collection of delinquent taxes.

Further, the Tax Claim Bureau acted in this matter as the agent of the Taxing Districts. Section 208 of the Real Estate Tax Sale Law states:

The Bureau ... shall, in the administration of this act, *be the agent of the taxing districts* whose tax claims are returned to the bureau for collection ...

erty in any political subdivision held under the provisions of this section. The petition shall set forth the reasons for such stay. If, in the opinion of the court, after hearing, there are sufficient reasons for such stay, the court shall have jurisdiction and power to enter an order staying such sale for any period not exceeding one year from the time fixed for such sale under subsection (a) of this section. In case of any such stay of sale, the properties in such political subdivision shall be sold in accordance with the provisions of this section on the date of the next annual sale.

72 P.S. § 5860.208 (emphasis added). Accordingly, the Tax Claim Bureau had an obligation to follow the Taxing Districts' directive to remove the Property from exposure to judicial sale.[3] The goal of the Real Estate Tax Sale Law is not to "strip the taxpayer of his property" but, rather, to collect taxes. *Tracy v. Chester County Tax Claim Bureau*, 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985). It was the Taxing Districts' prerogative to collect the delinquent taxes owed on the Property. In sum, the Taxing Districts had authority to direct the Tax Claim Bureau to remove the Property from the judicial sale list.

■ Next, Appellant argues that the Agreement was invalid and, thus, could not provide a basis for staying the judicial sale of the Property. In support, Appellant directs our attention to several statutory provisions.

Appellant first relies upon Section 603 of the Real Estate Tax Sale Law, 72 P.S. § 5860.603, for his argument that the Agreement was invalid. Section 603 provides that a record owner may remove a property from exposure to an upset sale by payment in full or agreement to pay 25% of the "amount due on all tax claims and tax judgments ... and the interests and costs ... in not more than three (3) instalments all within one (1) year of the date of said agreement...." [4] Since Linder did not pay the Tax Claim Bureau the taxes in full or enter into an installment agreement that conforms to the dictates of this statutory procedure,[5] Appellant asserts the Agreement is flawed.

■ However, Appellant's reliance upon Section 603 is misplaced. This provision applies to redemption of property prior to an upset sale, which is distinct from a judicial sale. As acknowledged by the parties, each type of tax sale is controlled by separate statutory provisions. *See Getson v. Somerset County Tax Claim Bureau,*

---

3. Appellant argues that the Tax Claim Bureau should have filed another petition with the trial court. This may be so as a practical matter, but it is not required by the Real Estate Tax Sale Law. Notably, Appellant does not assert that removing the Property from the June sale violated the trial court's decree or even that the trial court's decree required a judicial sale on a particular date.

> The Tax Claim Bureau had a duty to respond to the Taxing Districts' directive. Indeed, once the taxes were paid, at least in part, the factual basis to the Tax Claim Bureau's petition evaporated, creating a responsibility in the Tax Claim Bureau to take some action even without the Taxing District's directive.
> The important point is that the Taxing Districts had authority to direct the Tax Claim Bureau to stay the judicial sale of the Property. Whether a filing with the trial court was required, before or after the removal of the Property from the list, speaks to *how* the Taxing District's directive would be implemented.

4. It provides in relevant part,

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each installment shall be paid, and the amount of each installment.
> 72 P.S. 5860.603.

5. Linder owed the Taxing Districts $49,246.22 in delinquent city and school taxes. His first payment of $2,125 constituted approximately 4% of the taxes due.

696 A.2d 903 (Pa.Cmwlth.1997). The fact that the Agreement does not conform to Section 603 of the Real Estate Tax Sale Law is of no moment because it addresses a different legal situation, *i.e.,* the stay of a judicial sale.[6] In any case, we do not agree that Section 603 prescribes a single payment procedure for stopping an upset sale. A taxpayer who follows the Section 603 procedures, including an installment plan, may remove a property from sale; however, this does not mean that the taxing authorities cannot agree to another payment plan.

■ Appellant next argues that the Taxing Districts lacked authority to negotiate with Linder on the payment of his delinquent taxes. He argues that the Taxing Districts were divested of their authority to collect delinquent taxes by Section 26.1 of the Local Tax Collection Law (Collection Law), Act of May 25, 1945, P.L. 1050, *as amended* by the Act of March 22, 2002, P.L.2000, 72 P.S. § 5511.26a (b)(1).

Section 26.1 of the Collection Law provides in relevant part,

(b) (1) In a taxing district governed by this section that is also subject to the act of July 7, 1947 (P.L. 1368, No. 542), known as the Real Estate Tax Sale Law, the tax collector shall serve as a delinquent tax collector in accordance with subsection (a) only until the date established in accordance with section 306 of the Real Estate Tax Sale Law[7] for the return to the county tax claim bureau.

72 P.S. § 5511.26a(b)(1) (footnote omitted). Again, this statutory provision does not support the conclusion advanced by Appellant.

■ Section 26.1 gives certain authority to the tax collector for collection of delinquent taxes, but it does not divest taxing districts of their concurrent authority to collect taxes.[8] A separate provision of the Collection Law, Section 21,[9] authorizes a tax collector, a taxing district, or the Tax Claim Bureau to collect delinquent taxes.[10] Section 21 was not repealed by Section

---

**6.** As noted, the Real Estate Tax Sale Law does not prescribe the particulars of how to stay such a sale.

**7.** Section 306 provides,

(a) *It shall be the duty of each* receiver or *collector of any county, city, borough, town, township, school district or institution district taxes to make a return to the bureau on or before the last day of April of each year,* but no earlier than the first day of January of that year. The return shall be typewritten on a form provided by or acceptable to the county and shall include a list of all properties against which taxes were levied, the whole or any part of which were due and payable in the calendar year immediately preceding and which remain unpaid, giving the description of each such property as it appears in the tax duplicate, and the name and address of the owner as it appears in the tax duplicate, together with the amount of such unpaid taxes, penalties and interest due to but not including the first day of the month following the return.

72 P.S. 5860.306 (emphasis added).

**8.** Here, we deal with taxes for the years 1997 to 2000, before Section 26.1 of the Collection Law was even enacted.

**9.** Section 26 of the Collection Law appears not applicable to the Taxing Districts; however, disposition of that issue is not necessary to our decision today.

**10.** The Collection Law in pertinent part provides,

(a) A *tax collector* may institute a suit in assumpsit against a delinquent taxable for the collection of any real property taxes due and unpaid after the fifteenth day of May of the year following the year for which the taxes were levied and assessed

(b) In addition to all other remedies provided by this act, each *taxing district* shall have power to collect unpaid taxes from the persons owing such taxes by suit in assumpsit *or other appropriate remedy.*

72 P.S. 5511.21 (emphasis added).

26.1; it remains in effect. It is our task to give effect to all statutory provisions so long as it is possible to do so.

Our holding in *Wallingford Swarthmore School District v. Kuyumjian,* 155 Pa. Cmwlth. 635, 625 A.2d 1305 (1993) is instructive. In *Wallingford,* this Court considered the question of whether a school district is barred from collecting unpaid taxes once it has returned the duplicate tax returns to the county tax claim bureau. We found that it was our duty to give effect to the provisions of the Real Estate Tax Law and the Tax Collection Law. Unless one statutory provision was intended to supplant all others or unless the two provisions are irreconcilable, both provisions are to be given effect.[11] Thus, we held in *Wallingford* that taxing districts retain authority for collection of taxes notwithstanding a referral to a tax claim bureau.

Section 26.1 of the Collection Law limits the time that the tax collector has to file returns. It is without consequence to Section 21 of the Collection Law, which expressly gives taxing districts the authority to collect delinquent taxes by "assumpsit or other appropriate remedy." 72 P.S. § 5511.21(b).[12] Here, the remedy chosen by the Taxing Districts was the Agreement.

■ Appellant also argues that the Taxing Districts were not authorized to enter into an installment agreement that extended over 25 months because Section 11 of the Collection Law provides that "[a]ny taxing district shall have power to provide *by ordinance or resolution* for the collection and payment of its taxes in not more than four installments. 72 P.S. 5511.11 (emphasis added). Here, we do not consider an ordinance or resolution but, rather, a discrete, negotiated settlement with one taxpayer. Further, this provision relates to current, not delinquent, taxes. Accordingly, it is inapposite to this case.

The forfeiture of real property is a serious matter. Our Pennsylvania Supreme Court has explained:

> Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizens property to forfeiture for the nonpayment of taxes. We have had occasion before to note that we hold no brief with willful, persistent and long standing tax delinquents, but at the same time, we have also observed that the strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error ... to pay their taxes. *Ross Appeal,* 366 Pa. 100, 107, 76 A.2d 749, 753 (1950). As this Court stated in *Hess v. Westerwick,* the purpose of tax sales is not to strip the taxpayer of his prop-

---

11. In so reasoning, we applied time-honored principles of statutory construction announced in *Tremont Township School District v. Western Anthracite Coal Co.,* 364 Pa. 591, 73 A.2d 670 (1950).

12. It provides,

(b)(1) All taxes for which returns have been made to the bureau shall be payable only to the bureau and shall not be payable to or be accepted by any *taxing district* or *tax collector.*

(2) In the event that any such taxes are received or accepted by any taxing district contrary to the provisions of this section, the taxing district shall be liable to the bureau for, and the bureau shall deduct from any distribution to which the taxing district is entitled under section 205, all charges, fees, costs, commission and interest to which the bureau would otherwise have been entitled under the act if payment had been made directly to the bureau. 72 P.S. 5860.204(b) (emphasis added) (footnote omitted).

erty but to insure the collection of taxes. 366 Pa. 90, 98, 76 A.2d 745, 748 (1950).

*Tracy,* 507 Pa. at 297, 489 A.2d at 1339 (1995). Here, the Tax Claim Bureau received payment in full of Linder's delinquent county taxes prior to the judicial sale, and payment of the other taxes was underway in accordance with the Agreement.[13] There was no reason to proceed with the Property's forfeiture.

 Finally, Appellant asserts that the trial court abused its discretion in determining that the "Tax Claim Bureau obviated the effectiveness of any notice the record owner had received . . ." regarding the judicial sale of the Property. Trial Court Opinion at 5. Appellant believes that the trial court found, as a factual matter, that the Tax Claim Bureau assured Linder that his Property would be removed from the judicial sale list. The Tax Claim Bureau accepted Linder's payment of the county taxes, and it took delivery of Hackett's letter instructing it to remove the Property from the June 6, 2002 judicial sale list. These facts are supported by the record.[14] Appellant disagrees with the trial court's characterization of the record, but this is not abuse of discretion. Further, whether or not Linder received assurance from the Tax Claim Bureau that the Property would be removed from the judicial sale list is of no moment. He did receive that assurance from the Taxing Districts, which had the authority to give directions to its agent, the Tax Claim Bureau.

For these reasons, the order of the trial court is affirmed.

13. Here, a legally enforceable contract was entered into for the payment of close to $50,000 in delinquent taxes. The Taxing Districts concluded their interests were best served by pursuing that remedy as opposed to collecting $15,000 from the judicial sale. It

## ORDER

AND NOW, this 22nd day of January, 2004, the order of the Court of Common Pleas of Delaware County dated April 14, 2003 in the above-captioned matter is hereby affirmed.

was error for the Tax Claim Bureau not to effect this decision of the Taxing Districts.

14. In any case, if Appellant believes otherwise, he should have raised the issue of lack of substantial evidence, but he did not.