John A. WILLARD and Howard W. Harrison, Jr.

v.

DELAWARE COUNTY TAX CLAIM BUREAU and Herman Neumann and Howard W. Harrison, III and Cornelia Todd Harrison.

Appeal of: Herman Neumann.

Commonwealth Court of Pennsylvania.

Argued March 6, 2007.

Decided April 26, 2007.

---

Michael P. Dignazio, Media, for appellant.

H. Fintan McHugh, Media, for appellees.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Herman Neumann appeals from an order of the Court of Common Pleas of Delaware County (trial court) granting a petition to set aside a judicial sale of property in which he was the successful bidder. In this case we consider, *inter alia,* what notice is due under the Real Estate Tax Sale Law[1] to the record owners of property removed from one judicial sale list and then relisted for a subsequent judicial sale.

The property at issue in this case is located at 1315 Lawrence Road in Havertown, Delaware County (Property). John Willard operates a business on the Property known as Continental Auto Parts. In 1985, Willard and Howard W. Harrison, Jr., an attorney and self-described "passive investor," purchased the Property as tenants in common from the Goldstein family, who operated a wood treatment facility on an adjacent parcel. Shortly after the sale, Willard was notified by the United States Environmental Protection Agency (EPA) that it was investigating ground contamination caused by chemicals used in the Goldstein facility. In December 1992, the EPA informed Willard that individuals exposed to these on-site contaminants could

---

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

be at a higher than normal risk of developing health problems. The Property was ultimately designated a "Superfund" site under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601(9). Continental Auto Parts nearly failed after all but one employee left the company. Real estate taxes on the Property were delinquent for the years 1992 through 2005. The Tax Claim Bureau exposed the Property to upset sale in 1996, but the Property was not sold at that time.

On March 3, 2004, the Tax Claim Bureau filed a Petition and Rule to Show Cause returnable on April 19, 2004, upon the record owners to show why the Property should not be sold free and clear of all taxes and liens. The Bureau sent the petition and rule to Willard and Harrison at the address of the Property via certified mail. Willard signed the return receipt cards for himself and for Harrison. Reproduced Record at 131a (R.R. ——). Willard appeared without counsel at the April 19, 2004, hearing; however, the formal hearing did not take place. Instead, Willard was instructed, in accordance with local practice, to discuss the matter with the Tax Claim Bureau Solicitor, James E. DelBello. The trial court entered an order on April 19, 2004, setting June 9, 2004, as the date for the judicial sale of the Property. R.R. 48b.

Shortly thereafter, Willard's attorney, Barbara Scarlata, discussed her client's situation with DelBello and expressed her concern that a Superfund site could not lawfully be sold at judicial sale. DelBello asked for confirmation of the Property's Superfund status. Scarlata forwarded to DelBello a letter from Andrew Duchovnay, Senior Assistant Regional Counsel for EPA Region III, confirming the fact that the Property was a superfund site and stating that the EPA's investigation was ongoing. DelBello responded by faxing a letter dated June 7, 2004, to Kathy Wike, Judicial Sale Coordinator at the Tax Claim Bureau, that stated as follows:

Dear Kathy:

I am transmitting a copy of Andy Duchovnay's letter to Barbara Scarlata dated 5–26–04 regarding the [Property].... Based upon the circumstances described in the letter, *please remove this property from the 6–9–04 Judicial Sale* in order that we can develop more information regarding environmental issues at the property.

R.R. 266a (emphasis added). A copy of this letter was sent to Scarlata. In accordance with DelBello's instruction, the Property was removed from the June 2004 judicial sale list.

While the aforementioned events were transpiring, Harrison recorded a deed in Delaware County on May 3, 2004, transferring his title and interest in the Property to his children, Howard W. Harrison, III, and Cornelia Todd Harrison. Harrison told neither his children nor Willard that he had executed the deed, and the Harrison children would later testify they did not learn of the transfer until December 2005.

On May 25, 2005, the Property was sold for $165,000 at a judicial sale; Neumann was the purchaser. On June 23, 2005, Willard and Harrison filed a petition to set aside the sale claiming, *inter alia*, that the Tax Claim Bureau never notified them of the sale as required under Sections 308, 602, 607a and 608 of the Real Estate Tax Sale Law, 72 P.S. §§ 5860.308, 5860.602, 5860.607a, 5860.608. On December 22, 2005, Howard W. Harrison, III, and Cornelia Todd Harrison, along with Willard, filed a petition to intervene and to amend the original petition to set aside. The Harrison children alleged that they had just learned of their ownership interest in the Property and requested to inter-

vene as petitioners in substitution for their father. They also sought to amend the petition to set aside to allege that the Tax Claim Bureau failed to provide them, the actual record owners, with notice of the judicial sale. Finally, the Harrison children and Willard alleged additional notice violations by the Tax Claim Bureau under Sections 610, 611 and 612 of the Real Estate Tax Sale Law, 72 P.S. §§ 5860.610–5860.612.

The trial court conducted a hearing on the petitions to set aside and intervene on January 17, 2006. Willard testified that he first spoke with a representative of the Tax Claim Bureau in 1994 about the environmental problems on the Property. According to Willard, he was informed that "if it's a Superfund site, they had no intentions of selling it at a sheriff's sale." R.R. 85a. Willard and his former attorney, Barbara Scarlata, both testified as to how the Property had been removed from the 2004 judicial sale list at Solicitor DelBello's direction. It was Willard's and Scarlata's understanding that the Tax Claim Bureau would not proceed with a judicial sale because of the Superfund designation. Willard stated that he never received notice of the May 25, 2005, judicial sale, either personally, by mail, or by posting on the Property. Willard first learned of the 2005 sale when Neumann walked in to Continental Auto Parts and stated that he had bought the Property at a tax sale.

Harrison testified that he recorded a deed on May 3, 2004, gifting his 50% interest in the Property to his children. He did not tell his children or Willard about the deed until December 2005. Harrison had no knowledge of the judicial sale of the Property scheduled for June 2004 or the sale that was actually consummated on May 25, 2005. He first learned of the 2005 judicial sale when his son, Howard W. Harrison, III, told him that a man had come into Continental Auto Parts and informed Willard that he had bought the Property. Howard W. Harrison, III, and Cornelia Todd Harrison corroborated their father's testimony that they did not learn of their interest in the Property until December 2005. They testified further that they never received notice of the 2004 and 2005 judicial sales.

The trial court also heard testimony from Barbara Erle, Judicial Sale Coordinator for the Tax Claim Bureau. Erle is responsible for ensuring that all interested parties receive notice of a judicial sale of property. Erle coordinated the May 25, 2005, judicial sale of the Property and was familiar with the prior listing of the Property for judicial sale.

Erle explained that after the Property was removed from the 2004 sale list, her director "put it back into the sale" for May 25, 2005. R.R. 232a. Erle testified that the sheriff's office attempted without success to serve a petition and rule returnable for the May 25, 2005, judicial sale at Continental Auto Parts "at about 7 a.m. on each of three dates," which she acknowledged was "a little early to serve on anybody." R.R. 233a.[2] Service by registered mail to Willard and Harrison at the Property was likewise unsuccessful; Willard's mailing was returned as "unclaimed" and Harrison's as "addressee unknown." R.R. 235a, 280a, 281a. Erle stated further that "that's all we could do. We didn't do anything else" to effectuate notice of the 2005 sale. R.R. 236a. Erle acknowledged that no one in her office checked with the recorder of deeds or the prothonotary to confirm the identity of the record owners of the Property or to obtain alternative

---

**2.** Willard testified that Continental Auto Parts is open from 9:00 a.m. to 5:00 p.m., Monday through Friday. R.R. 100a.

addresses for Willard and Harrison. No one on Erle's staff consulted a local telephone directory for address information. Erle agreed that the Tax Claim Bureau had no evidence "indicating there was any knowledge on behalf of any of the Petitioners in this case or proposed intervenors, Cornelia Todd Harrison and Howard W. Harrison, III ... about the judicial sale in 2005." R.R. 238a.

Following the hearing, the trial court granted the petition of the Harrison children to intervene and found that none of the petitioners were provided with the notice of the 2005 judicial sale that is required by statute. The trial court set aside the sale and ordered that the Property be relisted for judicial sale on September 13, 2006. The trial court reasoned that once the Tax Claim Bureau removed the Property from the 2004 judicial sale list and the record owners were notified of that fact, the Bureau could not simply relist the Property for judicial sale without providing notice of the relisting. Neumann, as the putative purchaser of the Property, now appeals.

■ On appeal,[3] Neumann challenges the trial court's order on the following grounds:

(1) Willard had no right to notice of the 2005 judicial sale because he was duly served with the petition and rule for the 2004 sale, appeared on the return date, and offered no defense;

(2) Harrison lacked standing to contest the 2005 judicial sale because he divested himself of title after the trial court's April 19, 2004, order setting the date for the 2004 sale;

(3) The Tax Claim Bureau owed no duty to provide notice of the 2005 sale to the Harrison children because they acquired title after the April 19, 2004, order;

(4) The Harrison children should not have been permitted to intervene in the petition to set aside the 2005 judicial sale after the six-month statute of limitations had run (from the May 25, 2005, sale date); and

(5) The original petition to set aside the judicial sale failed to aver any violation by the Tax Claim Bureau of the notice provisions for judicial sales contained in Sections 610–612 of the Real Estate Tax Sale Law, and, although Willard and the Harrison children (as intervenors) sought to amend the petition to include such claims, the trial court did not specifically grant their request and could not grant relief for matters not alleged.[4]

Neumann's arguments are all based on the premise that April 19, 2004, the date of

---

3. Our scope of review in tax sale cases is limited to a determination of whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law. *In re Serfass*, 651 A.2d 677, 678 (Pa.Cmwlth.1994).

4. We reject Neumann's assertion that the trial court improperly considered allegations in the amended petition without formally granting leave to Willard and the Harrison children to amend. While it is true that the original petition to set aside filed by Willard and Harrison referred primarily to notice requirements in the Real Estate Tax Sale Law pertaining to upset sales, which are inapplicable here, the gravamen of the allegations in the original petition was that the Tax Claim Bureau failed to provide proper notice of the judicial sale of the Property. The Tax Claim Bureau was clearly on notice of the nature of the objections to the judicial sale. Moreover, one of the provisions cited in the original petition, Section 607a of the Real Estate Tax Sale Law, 72 P.S. § 5860.607(a), prescribes additional notification efforts that must be undertaken by a tax claim bureau in judicial, as well as upset, tax sales. *Rivera v. Carbon County Tax Claim Bureau*, 857 A.2d 208, 211 n. 5 (Pa.Cmwlth.2004).

the trial court's order directing that the Property be exposed to judicial sale on June 9, 2004, is the operative date for determining the rights of the various parties in interest. Neumann contends that service of the petition and rule for that sale was the last notice required to be given to the record owners. Therefore, the Tax Claim Bureau had no duty to provide notice to the parties of what he characterizes as the "continued" sale date of May 25, 2005. As support for his contention that the Tax Claim Bureau can continue a judicial sale without providing notice to the record owners of the continued sale date, Neumann directs the Court to its recent decision in *In re Public Sale of Properties (Appeal of Phillip Tappenden)*, 841 A.2d 619, 622 (Pa.Cmwlth.2004).

Neumann is correct that service of the rule to show cause why a property should not be sold at judicial sale is the final notice required to be served on the record owner prior to the sale. *In re Sale of Real Estate Northampton County Tax Claim Bureau*, 874 A.2d 697, 698 (Pa.Cmwlth. 2005); *In re Serfass*, 651 A.2d 677, 679 (Pa.Cmwlth.1994). There is in fact no requirement in the Real Estate Tax Sale Law that the landowner have actual notice of the date of the judicial sale itself. *Id.* However, cases like Northampton and *Serfass* are factually distinguishable from the present case, because in those cases the one and only scheduled judicial sale actually came to fruition. In the case at bar, the Tax Claim Bureau removed the Property from the 2004 judicial sale list and notified Willard, through his attorney, that it was doing so. Willard and his attorney both offered uncontradicted testimony that it was their understanding that the Bureau would not proceed with a judicial sale of the Property due to its Superfund designation. Thus, we reject Neumann's premise that the 2005 judicial sale was merely a continuation of the sale scheduled for June 2004. It was an entirely new judicial sale.

There is, in fact, no provision in the Real Estate Tax Sale Law for the concept of a "continued" judicial sale. Neumann asserts that the Tax Claim Bureau's authority to continue the judicial sale in this case is a logical extension of this Court's decision in *Tappenden*. We disagree.

*Tappenden*, like the case *sub judice*, involved a successful petition by the record owner, William Linder, to set aside a judicial sale of his property. Taxes on Linder's property had been delinquent for the years 1997 through 2001. After no bids were received at an upset sale, the court of common pleas ordered the property to be exposed to judicial sale on June 6, 2002. After receiving notice of the sale, Linder entered into an agreement with the taxing districts to pay the delinquent school and city taxes and began making payments. The taxing districts prepared a letter to the tax claim bureau instructing it to remove the property from the judicial sale list. Linder hand delivered the letter to the bureau and paid his delinquent county taxes in full. The bureau did not remove the property from the judicial sale list, and it was sold on June 6, 2002, as previously scheduled.

The taxing districts and Linder jointly filed a petition to set aside the judicial sale. The trial court set aside the sale, holding that the tax claim bureau, as agent for the taxing authorities, was obligated to follow their directions regarding exposure of the property to judicial sale. Phillip Tappenden, the successful bidder at the judicial sale, appealed to this Court. Tappenden argued, *inter alia*, that once the judicial sale had been ordered, it could not be stopped except by court order. In support, Tappenden noted that upset sales may be stayed only by application to court. Since the Real Estate Tax Sale Law is silent with respect to the stay of judicial

sales, Tappenden reasoned that judicial sales may not be stayed.

■ In rejecting Tappenden's argument, this Court noted that Section 208 of the Real Estate Tax Sale Law "gives a tax claim bureau broad authority for 'the management and disposition of property in accordance with the provisions of [the Law]' in meeting its obligation to collect taxes. 72 P.S. § 5860.208." *Tappenden,* 841 A.2d at 622. We reasoned further that, "[l]ogically, 'management and disposition' includes the ability to remove a property from a scheduled judicial tax sale when to do so will advance the collection of delinquent taxes." *Id.* Based upon additional language in Section 208 of the Real Estate Tax Sale Law stating that a tax claim bureau acts as "the agent of the taxing districts," 72 P.S. § 5860.208, we held that the bureau had an obligation to remove Linder's property from exposure to judicial sale when directed to do so by the taxing districts. We noted that this result comported with the goal of the Real Estate Tax Sale Law not to "strip the taxpayer of his property" but, rather, to collect taxes. *Tracy v. Chester County Tax Claim Bureau,* 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985).

■ Relying on *Tappenden,* Neumann argues that the Tax Claim Bureau's authority for the "management and disposition" of the Property is broad enough to have allowed it to "continue" the judicial sale from June 9, 2004, until May 25, 2005, without filing another petition and rule to show cause or otherwise notifying the record owners of the new sale date. The problem with Neumann's argument, as we explained above, is that the 2005 sale was not merely a continuation of the 2004 sale. The Tax Claim Bureau *removed* the Prop-

erty from the 2004 sale list and notified Willard of that fact through a written communication to his attorney. It is certainly true that under *Tappenden,* the Tax Claim Bureau's broad authority for the "management and disposition" of delinquent properties authorized it to remove the Property from the 2004 sale list. However, the Tax Claim Bureau must still exercise its authority "in accordance with the provisions of [the Real Estate Tax Sale Law]." Section 208 of the Real Estate Tax Sale Law, 72 P.S. § 5860.208. The Tax Claim Bureau understood this principle and, accordingly, filed a new petition and rule to show cause. It also made an ineffective attempt to serve Willard and Harrison with notice of the filing. The Court then set a date of May 25, 2005, for the judicial sale of the Property. Neumann's argument that a new petition was not necessary is belied by the Tax Claim Bureau's conduct in this case, and it finds no support in *Tappenden.*[5]

In short, the May 25, 2005, judicial sale was an entirely new proceeding and not a continuation of the June 9, 2004, sale from which the Property was withdrawn. Accordingly, the 2005 sale of the Property could not take place without satisfying the notice requirements contained in the Real Estate Tax Sale Law. The trial court held that the Bureau did not comply with these notice requirements, and we agree.

The requirements for judicial sales are found in Sections 610 through 612.1 of the Real Estate Tax Sale Law. Under Section 610 of the Real Estate Tax Sale Law, where the upset price is not bid at an upset sale, a tax claim bureau may petition the trial court for a rule to sell the property at a judicial sale free and clear of all claims, liens and mortgages. 72 P.S.

---

5. It is well settled that strict compliance with the Law's notice provisions is mandatory because the "tax sale laws were enacted with the primary purpose of insuring the collection of taxes, and not to strip away citizens' property rights." *Rivera v. Carbon County Tax Claim Bureau,* 857 A.2d 208, 214 (Pa.Cmwlth. 2004).

§ 5860.610. The rule must be personally served by the sheriff on any party with an identifiable interest in the property, or, if service cannot be made in the Commonwealth, then by the sheriff via registered mail with return receipt requested. *In re Serfass,* 651 A.2d at 679; Section 611 of the Real Estate Tax Sale Law, 72 P.S. § 5860.611.[6] After the court has been satisfied that the rule has been properly served and that the facts in the petition are correct, then the court decrees that the property in question be sold at a future time free of, *inter alia,* all "tax and municipal claims." Section 612 of the Real Estate Tax Sale Law, 72 P.S. § 5860.612.

██ The Law imposes additional notification requirements in the event that any mailed notification of a pending upset or judicial sale is either returned without the required receipted personal signature or other under circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee. Section 607a of the Law, 72 P.S. § 5860.607a(a). In that event, before the sale can be conducted or confirmed, the tax claim bureau must "exercise reasonable efforts to discover the whereabouts of such person ... and notify him." *Id.* These efforts shall include, but not be limited to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office. *Id.*

The undisputed evidence in this case indicates that none of the parties with an identifiable interest in the Property received notice of the May 2005 judicial sale. The Bureau was presumably aware that it needed to effectuate such service since it attempted to do so by personal service and registered mail. The Tax Claim Bureau's own representative, Barbara Erle, testified that the sheriff attempted, without success, to serve the petition and rule at Continental Auto Parts on three different occasions, albeit at an hour so early the business was not yet open. Erle admitted that although the registered mailings to Willard and Harrison at the Property were returned without receipt, her office did not make any effort to discover the whereabouts of the intended recipients by consulting the recorder of deeds, the prothonotary or even a local telephone directory. The Tax Claim Bureau made no attempt to notify Harrison's children, even though they were readily identifiable as the successors to their father's interest in the Property by virtue of the deed of gift recorded in Delaware County on May 3, 2004, nearly one year before the judicial sale.[7] Finally, Willard, Harrison and the Harrison children all testified that they were unaware of the judicial sale scheduled for May 25, 2005.

For these reasons, we affirm the order of the trial court setting aside the May 25, 2005, judicial sale of the Property.

### ORDER

AND NOW, this 26th day of April, 2007, the order of the Court of Common Pleas of Delaware County in the above-captioned matter, dated June 28, 2006, is hereby AFFIRMED.

---

6. Section 611 of the Real Estate Tax Sale Law states: "Service of the rule shall be made in the same manner as writs of scire facias are served in this Commonwealth." 72 P.S. § 5860.611.

7. Neumann argues that the trial court erred by allowing the Harrison children to intervene in this matter. This argument is clearly without merit since they were the real parties in interest at the time of the 2005 judicial sale.