IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AES Drilling Fluids, LLC,         :
                Appellant    :
                         :
       v.             :
                         :   No. 583 C.D. 2023
Clearfield County Tax Claim Bureau  :   Argued: April 8, 2025

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                FILED: June 9, 2025

AES Drilling Fluids, LLC (AES) appeals from the May 4, 2023, order of the Court of Common Pleas of Clearfield County (trial court). The trial court's order denied AES's objections to the tax sale of property previously owned by AES in Clearfield County (County). Upon review, we reverse.

## I. Factual & Procedural Background

On October 13, 2022, the Clearfield County Tax Claim Bureau (Bureau) filed a consolidated return of sale of properties for unpaid tax claims with the trial court. Reproduced Record (R.R.) at 1a-4a. The filing stated that various properties in the County had unpaid liens and claims for the 2020 tax year and that a tax sale for those properties had been scheduled for September 16, 2022. *Id*. at 2a. The Bureau averred that it had advertised the sale in three local newspapers in August 2022 and attached proof of those publications. *Id*. The Bureau stated that it had informed property owners of the impending sale by sending them notices via

"certified mail, restricted delivery, return receipt requested" and posting notices of the sale on the properties. *Id.* at 2a-3a. The sale had taken place as advertised. *Id.* at 3a. The filing stated that on October 3, 2022, post-sale notice was provided to the owners that the properties were sold and advising the owners of their right to object to the sale within 30 days after the trial court's conditional confirmation *nisi* of the consolidated return. *Id.*

A parcel owned by AES was listed at a delinquency price of $1,011.10 and sold for $3,000.00 to Property Development, LLC, which intervened in this matter and joins the Bureau's brief to this Court. R.R. at 14a. The October 3, 2022, notice to AES regarding that property was sent to AES at P.O. Box 3075, McKinney, TX 75070 (the McKinney address). *Id.* at 36a.

On October 20, 2022, the trial court issued an order confirming *nisi* the sales. R.R. at 35a. On November 16, 2022, AES filed a timely objection and petition to set aside the sale on the basis that the Bureau failed to comply with the notice and service provisions of the Real Estate Tax Sale Law (RETSL),[1] which establishes the procedures for collection of taxes through upset sales and judicial sales and for objecting to such sales. R.R. at 37a. Specifically, AES averred that the Bureau failed to properly notify AES of the underlying claim for tax delinquency via "notice of return and claim" because the notices were sent to the McKinney address, which is no longer correct. *Id.* at 39a-47a & 57a. AES also alleged that the Bureau failed to properly notify it by mail of the sale and did not comply with the RETSL's requirements for public posting of the notice of sale at the property. *Id.*

AES attached to its objection copies of documents it stated it received after requesting the Bureau's file on this matter. These included a green certified

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-.803.

mail card from the McKinney address that appears to have been signed as received on April 16, 2021; a May 2022 notice of the September 2022 sale sent by the Bureau to the McKinney address; the notarized affidavit of Holly McGovern (McGovern), who posts the County's property notices, attesting that she personally served and posted the notice on July 13, 2022;[2] a piece of returned first class mail sent by the Bureau to the McKinney address in August 2022 before the sale; a green certified mail receipt and green card indicating receipt of an item mailed from Clearfield to the McKinney address on September 30, 2022, about two weeks after the sale; and a piece of returned first class mail sent by the Bureau to the McKinney address on September 30, 2022. *Id*. at 57a-62a.

The trial court held a hearing on January 12, 2023. Heather Clark (Clark), an administrative tax assistant with the Bureau, testified that on May 6, 2022, the Bureau issued a notice of tax sale for the relevant parcel. R.R. at 127a. She confirmed that such notices were to be sent by certified mail with restricted delivery and a signature upon receipt. *Id*. She acknowledged that in preparation for the hearing, she did not find a signed green certified mail return card for the May 2022 notice of sale in the file of this matter. *Id*. at 128a. She stated, however, that the mailing was not returned and that tracking information showed that it was delivered to the McKinney address. *Id*. The record includes the May 2022 notice, which was addressed and sent to AES via restricted delivery at the McKinney address, and the corresponding postal service tracking printout reflecting delivery and pick up at the McKinney post office on May 16, 2022. *Id*. at 79a-81a. Clark noted that the file did include a signed and returned green card for the post-sale notice also sent to the McKinney address. *Id*. at 129a.

---

[2] In McGovern's subsequent hearing testimony summarized below, she acknowledged that she did not actually physically post the notice on the property on that date.

3

Clark testified that the Bureau gets the names and addresses of taxpayers from the county assessor's office. R.R. at 132a. Her office relied on that information and she did not personally cross-reference the addresses. She confirmed printouts from the assessor's office for two AES-owned properties in the County that had different addresses: the subject parcel showed the McKinney address for AES while the other parcel showed AES's mailing address to be P.O. Box 460389, Houston, TX 77056 (Houston address). *Id*. at 133a; *see also id*. at 91a-92a. Another printout showed that local property taxes on the subject parcel were billed by the County tax collector to the incorrect McKinney address but local school taxes on the subject parcel were billed to the correct Houston address. *Id*. at 136a; *see also id*. at 100a-101a. The record also includes a copy of an April 1, 2021, school tax bill for 2020 for the parcel with the office building on it; the bill is addressed to the correct address in Houston and was paid with an AES check dated April 30, 2021. *Id*. at 104a-05a.

Clark acknowledged that the Bureau's notices regarding the September 2022 sale were not sent to the Houston address. *Id*. She confirmed that in August 2022, a 10-day notice of the sale had been sent by first class mail to the McKinney address but was returned undelivered. *Id*. at 164a & 166a. She was unaware if any additional efforts were made by the Bureau in August to notify AES of the upcoming sale and no documentation of such efforts was in the file for this matter. *Id*. at 164a-65a. However, she stated that if the initial notice of sale sent in May 2022 had been returned undelivered, the Bureau would routinely have followed up with additional notice efforts. *Id*. at 166a.

During the hearing, the Bureau's counsel acknowledged that with regard to the initial notice and return of the underlying claim, the Bureau "does not

4

have a copy of the actual mailing. Only a green card returned, but I will state we do not have a copy of the actual return itself to indicate what it stated on it as far as the tax claim statute would require." R.R. at 152a-53a.

Lisa Conrad (Conrad), the County's assessor, testified that if the tax collector determines that a property's owner is at a different address from the assessor's office records, the collector should notify the assessor's office of the change, but this is not always the case. R.R. at 139a-40a & 142a-43a. She stated that if a piece of mail is signed for as delivered to the recipient, the Bureau will not have a reason to think there might be another address. *Id*. at 140a. She confirmed that a "notice of return and claim" for delinquent 2020 school taxes for the other AES property was sent to the Houston address on April 1, 2021, and the amount due was paid on April 30, 2021. *Id*. at 141a; *see also id*. at 104a-05a. She stated, however, that if the assessor's office receives information regarding a new address for a specific parcel, it cannot use that address to change the information in its records for another parcel. *Id*. at 143a.

McGovern stated that she received the assignment to post the subject parcel and prepared an affidavit after she visited the property with an unnamed associate on July 13, 2022. R.R. at 144a-45a. When they approached the property, "it didn't look like there was, like it was anybody working out of there." *Id*. She knocked on the door of an office building, which was not located on the parcel at issue, and a man came out and asked if he could help them; she told him she was there to post a property sale notice because the taxes were delinquent and the property would be sold if the taxes were not paid. *Id*. at 146a-47a; *see also id*. at 155a-57a (testimony by AES's witness that the parcel with the office building is not the parcel subject to the sale). He took the notices from her, so she admitted that she

5

was not able to physically post them, although she later attested in her affidavit that she had done so. *Id*. at 146a-48a; *see also id.* at 89a.

Derick Weitoish (Weitoish), AES's regional operations manager, testified that although he was not there when McGovern visited, he knew she had gone to the office building, which is not located on the parcel subject to sale. R.R. at 155a-57a. He acknowledged that someone standing with Route 322 behind them and looking up Poor Farm Lane would see the office building and that the subject parcel was behind it; a visitor would have to pass by the building to reach the subject parcel. *Id*. He works at the building and "recall[ed] receiving the posting" after McGovern's visit because it "was placed on the front doors." *Id*. at 157a. Pursuant to questioning by another attorney, he reiterated that he "did receive the notice as it was posted to the front door." *Id*. at 158a.

Kim Canny (Canny) is AES's accounting supervisor and deals with the agents that handle property taxes for AES in its different locations. R.R. at 160a-61a. Until 2018, AES used an agent located at the McKinney address, but it currently uses an agent located at the Houston address. *Id*. The change in agents was made before she started with AES and she did not personally advise the County or its tax entities of the new address. *Id*. AES has no access to its tax agent's post office boxes and only pays the bills it receives from the agent. *Id*. at 162a. AES's former agent in McKinney would not have had authority to accept any documents on AES's behalf after the change to the new agent in Houston. *Id*. at 162a-63a.

After the hearing, the parties submitted briefs, and on May 4, 2023, the trial court issued an order denying AES's objection and petition to set aside the sale. R.R. at 171a. On May 9, 2023, the trial court issued its opinion. *Id*. at 180a-86a. The trial court noted deficiencies in the Bureau's formal noticing and posting of the

6

sale but concluded that AES had actual notice of the impending sale in September 2022 and that the public had reasonable notice of the sale. *Id.* AES appealed to this Court.

## II. Issues

AES asserts several issues, which we reorder for clarity.[3] AES first argues that because it was not properly served with the underlying notice of return and claim, the claim was never made absolute. AES's Br. at 9-17. Next, AES avers that it also was not properly notified of the impending sale. *Id.* at 21-27. Lastly, AES maintains that the physical posting of the notice of sale was deficient because it was not on the specific parcel subject to the sale but at the other AES property where the office building was located. *Id.* at 17-21.

## III. Discussion

### A. Service of Notice Making the Claim Absolute

Section 306(a) of the RETSL states that each year, between January 1st and April 30th, tax collectors must provide their governmental unit's tax claim bureau with a return form listing the properties with delinquent taxes from the previous year. 72 P.S. § 5860.306(a). The bureau must notify the owners as provided for in Section 308(a) of the RETSL:

> Not later than the thirty-first day of July of each year, the bureau shall give only one notice of the return of said taxes and the entry of such claim in one envelope for each delinquent taxable property, *by United States registered mail or United States certified mail, return receipt*

---

[3] This Court's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion. *City. of Phila. v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017).

7

*requested, postage prepaid, addressed to the owners at the same address listed on the form returned by the tax collector for taxes that are delinquent. . . .* If no post office address of the owner is known or if a notice mailed to an owner at such last known post office address is not delivered by the postal authorities, then notice as herein provided shall be posted on the property affected. . . . Each mailed and posted notice shall[] (1) show all the information shown on the claim entered, (2) state that if payment of the amount due the several taxing districts for said taxes is not made to the bureau on or before the thirty-first day of December next following, and no exceptions thereto are filed, the said claim shall become absolute, (3) state that on July first of the year in which such notice is given a one (1) year period for discharge of tax claim shall commence or has commenced to run, and that if full payment of taxes is not made during that period as provided by this act, the property shall be advertised for and exposed to sale under this act, and (4) state that there shall be no redemption after the actual sale.

72 P.S. § 5860.308(a) (emphasis added).

On the first day of January in the year "following the notice hereinbefore prescribed, if the amount of the tax claim referred to in the notice has not been paid, or no exceptions thereto filed, the claim shall become absolute" and the property may be subject to sale. 72 P.S. § 5860.311. Once the claim becomes absolute, an owner may seek to reopen the claim only on the basis of payment or "failure to receive notice." 72 P.S. § 5860.314(e). *Section 314(e) is the exclusive procedure for challenging defective notice of delinquency claims and is distinct from the procedures for challenging the validity of a tax sale, which will be addressed in the next section. Id.*; *Zelno v. Lyons*, 245 A.3d 1185, 1186-87 (Pa. Cmwlth. 2021).

"The Bureau bears the burden of showing adequate notice under whatever RETSL provision is applicable[.]" *In re Tax Claim Bureau of Columbia Cnty.*, 329 A.3d 811, 816 (Pa. Cmwlth. 2025). In *George v. Delaware County Tax*

8

*Claim Bureau*, 323 A.3d 106 (Pa. Cmwlth. 2024), this Court held that the purpose of a tax sale "is not to strip an owner of his property but rather to ensure that the tax on the property is collected." *Id*. at 110. To that end, "the notice provisions of the [RETSL] are to be strictly construed" and "failure by a tax claim bureau to comply with all the statutory notice requirements ordinarily nullifies a sale." *Id*.

In *Zelno*, the bureau's 2017 certified mail notice to Zelno of a delinquency claim for 2016 was returned unsigned. 245 A.3d at 1186. In July 2018, the bureau's mailed notice of the scheduled September 2018 sale was likewise returned unsigned, but the bureau personally served Zelno with a notice of the sale and posted the notice at the property. *Id*. In 2019, after the property was sold, Zelno filed a petition to set aside the sale, averring that even though she had proper notice of the sale, it was invalid because she had not been notified of the underlying delinquency claim and, therefore, the claim had never become absolute. *Id*.

This Court noted in *Zelno* that in light of the July 2018 pre-sale personal service and posting, Zelno had actual notice of the September 2018 sale before it occurred but failed to use that time to challenge the underlying tax claim based on Section 314(e). Instead, she waited until after the sale and then sought to invalidate it, which was improper. We distinguished those facts from *Watson v. Ciaffoni*, 122 A.2d 56 (Pa. 1956), and *In re Consolidated Return of Sale of Properties for Delinquent Taxes by Fayette County Tax Claim Bureau v. Nestor*, 416 A.2d 636 (Pa. Cmwlth. 1980), where sales were set aside because the owners were not notified of either the underlying claim or the sale. *Zelno*, 245 A.3d at 1187-88.

Here, with regard to the Bureau's pre-sale compliance with Section 308(a), the relatively sparse record does not include the County tax collector's return to the Bureau for the 2020 delinquency claims regarding the subject parcel, which

9

would have been produced and provided to AES in 2021.[4]  However, in May 2022, the Bureau issued a notice of the impending September 2022 sale to AES at the McKinney address with a "restricted delivery" tracking designation ending in 2466. R.R. at 57a & 79a-80a.  The record includes a screenshot showing that this mail item was picked up at a post office in McKinney on May 16, 2022, but does not include a certified mail receipt or signed green card for the item, and Clark testified that she did not have one in the file for this matter.  *Id.* at 81a & 128a.  The record also includes a first-class mail envelope returned as undelivered in August 2022, which Clark identified as the 10-day pre-sale notice sent to the McKinney address.  *Id.* at 64a, 164a & 166a.

The trial court cited Section 308(a) but did not opine on whether the Bureau's notice to AES of the underlying tax claim complied with that provision. R.R. at 185a-86a.  However, the trial court relied on *Zelno* to conclude that AES had actual notice of the September 2022 sale after McGovern's July 2022 visit, which, the trial court opined, cured any notice defects.  *Id.*  In the trial court's view, AES had two months before the sale to resolve or challenge the underlying claim, and its attempt to set aside the sale after failing to do so was improper.  R.R. at 185a-86a.

AES maintains that the trial court erred because the Bureau's failure to properly notify AES of the underlying tax claim as required by Section 308(a) precluded the claim from becoming perfected or made "absolute," and the subsequent sale was invalid regardless of any subsequent or actual notice AES had of the sale before it occurred.  AES's Br. at 9-13.  AES argues that *Zelno* is

---

[4] No testimony was taken as to what happened in this matter prior to 2022.  We note, however, the presence in the record of a green certified mail card that appears to have been signed and returned from the McKinney address on April 16, 2021, notwithstanding AES's claim that it stopped using an agent in McKinney in 2018.  R.R. at 60a & 160a-61a.

distinguishable because Zelno waited until March 2019 to challenge the previous September 2018 tax sale, whereas AES filed its objection on the basis of defective notice of the underlying claim as soon as it learned of the sale and within 30 days of the trial court's order conditionally confirming *nisi* the September 2022 sale. *Id*. at 15. In the alternative, AES avers that *Zelno* was incorrectly decided because Section 311 of the RETSL states that a claim cannot be made absolute until the January "following the notice hereinbefore prescribed" in Section 308(a), which presupposes the validity of that notice, and because Section 314(e) of the RETSL does not qualify or limit an owner's ability to challenge a claim on the basis of defective notice of that claim. *Id*. at 16.

The Bureau acknowledges that the notice of return and claim was not in its file for this matter but notes, as its counsel did at the hearing, that the file does include a returned green card from April 2021 that can be associated with certified mailing of the notice of return and claim to AES, so the Bureau maintains that it reasonably proceeded on the basis that Section 308(a) notice was proper and that the claim became absolute before the parcel became subject to sale. Bureau's Br. at 5. Primarily, however, the Bureau alleges that, as the trial court found, AES had actual notice of the impending sale when McGovern left the sale notices in July 2022 and because Weitoish, an AES manager at the location, testified that he had seen the notices on the front door of the main office building on a parcel adjoining the subject property. *Id*. at 5-8.

As stated above, the Bureau must prove adequate notice under RETSL. *Tax Claim Bureau of Columbia Cnty*., 329 A.3d at 816. Section 308(a) requires that the notice of return and claim be sent to the owner "by United States registered mail or United States certified mail, return receipt requested, postage prepaid." 72 P.S.

11

§ 5860.308(a). The Bureau's counsel admitted that the notice of return and claim was not in the Bureau's file for this matter and the only evidence that the notice was sent to AES in 2021, when the 2020 delinquencies would have been processed, is a certified mail green card that was signed and returned to the Bureau from the McKinney address on or about April 16, 2021. R.R. at 60a. However, the record does not include the corresponding certified mail receipt for that card or the actual notice of return and claim that was allegedly sent, so there is no way to contextualize that card other than its presence in the Bureau's file for the subject parcel.

As noted, the trial court did not expressly determine that the Bureau failed to comply with Section 308(a) prior to scheduling the tax sale in May 2022. The record in this regard, consisting only of the 2021 green card and the Bureau's counsel's admission at the hearing that the Bureau did not keep a copy of the actual mailing purportedly associated with that card, suggests that the Bureau in fact did not meet its burden to comply with Section 308(a) prior to scheduling the sale. This is problematic in light of AES's having promptly paid delinquent 2020 school taxes on the adjoining parcel in April 2021 when it received notice at the correct Houston address. *See* R.R. at 104a-05a. We conclude that the trial court's determination that AES had either RETSL-compliant or actual notice of the impending sale was unsupported by the record.[5]

The record shows the Bureau did not meet its burden to prove its compliance with Section 308(a)'s requirements to notify AES of the delinquencies prior to scheduling the sale because the Bureau could not produce evidence showing

---

[5] As discussed further in the next section, this Court's precedents arguably present some inconsistencies in analyzing whether actual notice can cure a failure to comply strictly with all of the notice requirements of the RETSL, but as neither compliance with RETSL nor actual notice has been established in this case, we need not consider or reconcile any of these apparent inconsistencies.

12

that the notice of filing of return and entry of claim had been mailed by registered and certified mail or had been duly received by AES. Because the Bureau did not meet its burden and the record does not support the trial court's conclusion that AES had actual notice of the delinquencies prior to the sale, the trial court erred in determining that the delinquency had properly been made absolute.

The Bureau's failure to comply with the notice requirement to make the delinquency absolute is dispositive of this matter. However, for the purpose of completeness, we address AES's remaining assertions of error.

### B. Service of the Tax Sale Notice

Section 602(e)(1) and (2) of the RETSL states that in addition to publishing the notice of sale in appropriate news outlets, tax claim bureaus must also notify owners of scheduled sales, as follows:

> (1) At least thirty (30) days before the date of the sale, by United States *certified mail, restricted delivery, return receipt requested*, postage prepaid, to each owner as defined by this act.
>
> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. *It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office*.

72 P.S. § 5860.602(e)(1)(2) (emphasis added).[6]  Section 607.1(a) sets forth the bureau's duties in this regard in greater depth:

> (a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and *such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.* The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of *the dockets and indices of the county tax assessment offices*, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.  When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a) (emphasis added).[7]

As with Section 308(a), strict compliance with these notice requirements is normally required.  We acknowledge that there have been instances in which this Court has excused defects in a tax claim bureau's compliance with the RETSL's formal notice requirements where the bureau proved the owner had actual

---

[6] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602(e)(1)(2).

[7] Added by the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a).

14

prior notice of the sale. *See, e.g.*, *Zelno*, 245 A.3d at 1188; *In re Consol. Reps. & Return by the Tax Claim Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 647-48 (Pa. Cmwlth. 2016) (*Neff*); *Casaday v. Clearfield Cnty. Tax Claim Bureau*, 627 A.2d 257, 259-60 (Pa. Cmwlth. 1993). These decisions appear to conflict with this Court's recent decisions in *George* and *Sale of Tax Delinquent Property on October 19, 2020*, 308 A.3d 890 (Pa. Cmwlth. 2024), which suggest that any failure to comply with the statutory notice requirements of the RETSL is a fatal defect that actual notice cannot cure. However, we need not reconcile any apparent conflict in the instant case, as the record indicates AES received neither RETSL-compliant notice nor actual notice of the impending tax sale.

Here, the record includes the Bureau's May 2022 notices of sale to AES. R.R. at 57a & 79a. These notices, which were sent to the McKinney address, clearly did not go to the proper Houston address of AES's current tax agent. *Id*. The Bureau admittedly did not have a returned certified mail green card for these notices. *Id*. at 128a. However, tracking information showed that one notice was at least delivered to the McKinney post office and was picked up there by an unidentified individual on May 16, 2022. *Id*. at 81a. The 10-day presale notice, apparently sent to the McKinney address by first class rather than certified mail, was returned undelivered in August 2022. *Id*. at 61a.

Clark, a tax assistant for the Bureau, acknowledged that the assessor's office had both the McKinney and Houston addresses for AES's properties in the County. R.R. at 132a-33a. Moreover, *the assessor's office had the Houston address as well as the McKinney address for the subject property*, as school tax bills for the parcel were being sent to Houston even though County tax bills were being sent to McKinney. *Id*. at 100a-01a & 182a-83a. Clark had not followed up to determine

15

which was the correct address and could not say that anyone else at the Bureau did so either; she merely noted that even though the Bureau did not receive a green card back from the May 2022 notice, it had not been returned undelivered, so she believed the Bureau was not expressly on notice that the McKinney address was incorrect. *Id*. at 164a-66a. Conrad, the County assessor, confirmed that if a piece of mail is signed for as delivered, the County would not have a reason to think there might be another address and that even if the County has different addresses for the same owner of multiple properties, it cannot change the address of one property to conform with the address for another property. *Id*. at 140a & 143a. Of course, this testimony did not account for the Bureau's failure to recognize the availability of the correct Houston address here, where it was already in use for assessment of school taxes on *the very property at issue*.

The record also includes McGovern's testimony that in July 2022, when she visited the property, an unnamed individual at AES's offices took the notices from her. R.R. at 144a-45a. Weitoish, AES's regional operations manager for the Clearfield location, stated that he had personally received and seen the notices on the front door of the main office building on property adjacent to the subject parcel. *Id*. at 155a-57a. However, Weitoish was not asked whether he advised AES's corporate offices in Texas of the sale and the record includes no other evidence indicating that he was an authorized agent of AES or that AES itself ever actually learned of the impending sale before it occurred. *Weaver*, 324 A.3d at 715-16.

The trial court correctly acknowledged AES's argument that when the May 2022 notice of sale sent via certified mail by the Bureau to the incorrect McKinney address did not result in a returned signed green card and the subsequent 10-day notice mailed first-class in August to the McKinney address was returned as

16

undeliverable as addressed, the Bureau's obligation to conduct further efforts to get the correct information was triggered. R.R. at 182a-83a. The trial court also noted that, based on the assessor's evidence, the subject parcel had the incorrect McKinney address for property taxes but the correct Houston address for school taxes; this put the Bureau on notice that at least two addresses for AES were of record for the subject parcel. *Id*.; *see also id*. at 100a-01a.

However, the trial court concluded that AES "received actual notice through personal service and therefore the formal requirements of notice did not need to be strictly met." R.R. at 171a. The trial court cited McGovern's testimony and stated that AES had 64 days from receiving the actual notice of the sale but did not contest the underlying claim or move to resolve the delinquency until after the sale. *Id*. at 181a & 183a. Relying on *Zelno*, the trial court upheld the sale. *Id*. at 186a.

AES acknowledges that McGovern handed the notices of sale to an "alleged agent of AES at a building located on an adjacent parcel" and that there is "admittedly, testimony by an individual [Weitoish] who stated that he knew about the Tax Sale as a result of" McGovern's visit and interaction with the individual who answered the door of the building. AES's Br. at 5 & 20. However, AES does not admit that it had actual notice of the sale and maintains that the Bureau's failure to comply with Sections 602(e) and Section 607.1(a) should nullify the sale. AES's Br. at 16 & 22-27. The Bureau maintains that its compliance was sufficient because the May 2022 notice to the McKinney address was not returned undelivered, McGovern's purported personal service on AES in July 2022 cured any defects in its formal notice, and the sale was valid because AES had two months prior to the sale to remedy the delinquency. Bureau's Br. at 10-12. We disagree.

17

On this record, we cannot say that the Bureau strictly or even substantially complied with the pre-sale notice requirements of Section 602(e). Based on the tracking information in the record, the May 2022 notice may have been delivered to the (incorrect) McKinney address, but the Bureau did not receive a signed certified mail green card in return. Then, the August 2022 10-day notice to the McKinney address was returned undelivered.

These events obliged the Bureau to conduct further efforts as set forth in Section 607.1(a), which states that when a notice is "not returned or acknowledged at all," the bureau "must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him" and must do so "before the sale can be conducted." 72 P.S. § 5860.607a(a); *see also George*, 323 A.3d at 110-12 (concluding that bureau's failure to conduct reasonable efforts to determine owner's whereabouts invalidated sale). Even a minimal effort, such as contact with the assessor's office, would have revealed to the Bureau that *for the subject parcel*, the County had two Texas addresses for AES, which in turn should have triggered an inquiry to determine which address was correct and then to re-send the Section 602(e) notice of sale to that address in or around May 2022. The Bureau's witness, Clark, admitted that this was not done. R.R. at 164a-66a.

As with Section 308(a), we find the Bureau's lack of due diligence and failure to establish compliance with Section 602(e) problematic, particularly in light of AES's having promptly paid delinquent 2020 school taxes on the adjoining parcel when it received notice at the correct Houston address in April 2021. *See* R.R. at 104a-05a. The Bureau's failure to strictly, or even substantially, comply with Sections 602(e) and 607.1(a) is troubling since the scheduling of the tax sale started a clock ticking towards divestiture of AES's property in the absence of proper notice

18

and, as noted, the purpose of these notice provisions is to ensure that the tax is collected, not to sell off properties. *George*, 323 A.3d at 110.

Although the Bureau failed to show compliance with Sections 602(e) and 607.1(a), the Bureau suggests that its noncompliance should be excused on the basis that AES had actual notice of the impending sale. Even if we were to accept the Bureau's assertion that such a cure is possible, we conclude that the trial court's determination that AES had actual notice of the impending sale was unsupported by the record, as explained above.

As noted, AES's location in Texas makes this case unlike *Cruder v. Westmoreland County Tax Claim Bureau*, 861 A.2d 411, 416 (Pa. Cmwlth. 2004), and *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514 (Pa. Cmwlth. 1998), where an employee signed for the mailed notices, but the owners were physically present and would or should have personally seen the notices one way or another, including the notices posted on the subject property. 861 A.2d at 416; 714 A.2d at 517. It is also unlike the cases where record evidence established either directly or circumstantially that the owner, rather than an employee, had actual notice of the impending sale. *See Zelno*, 245 A.3d at 1186; *Neff*, 132 A.3d at 643; *Casaday*, 627 A.2d at 249.

The record here shows the Bureau did not prove its compliance with Section 602(e) or Section 607.1(a). Decisions of this Court where actual notice has seemingly overcome some defects in the statutory notice offer no help to the Bureau here because, in any event, the Bureau also did not prove that AES received actual notice of the scheduled sale so as to provide an ostensible cure for the Bureau's noncompliance with the law. Because the Bureau did not meet its burden and the

19

record does not support the trial court's conclusion that AES had actual notice of the delinquencies prior to the sale, the trial court erred in this regard.

### C. Public Posting of the Notice of Sale

In addition to publication and proper noticing by mail, Section 602(e)(3) of the RETSL requires that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." 72 P.S. § 5860.602(e)(3). As defined, posting requires the following:

> (1) In the case of property containing assessed improvements, affixing notices as required by this act:
>
> (i) To a portion of an improvement situated to be reasonably conspicuous to both the owner and the general public.
>
> (ii) To a stake secured on or adjacent to the property, within approximately twenty-five (25) feet of any entrance to the property in a manner situated to be reasonably conspicuous to both the owner and the general public, in cases in which subclause (i) does not apply.
>
> (iii) Adjacent to the property line, on a stake secured on or adjacent to the property in a manner reasonably conspicuous to the owner and the general public in cases in which subclauses (i) and (ii) do not apply.
>
> (2) In the case of property containing no assessed improvements, affixing notices as required by this act:
>
> (i) To a stake secured on or adjacent to the property, within approximately twenty-five (25) feet of any entrance to the property in a manner situated to be reasonably conspicuous to both the owner and the general public.

20

(ii) Adjacent to the property line, on a stake secured on or adjacent to the property in a manner reasonably conspicuous to the owner and the general public in cases in which subclause (i) does not apply.

(3) In the event that a reasonably conspicuous location in accordance with clause (1) or (2) is not available, placing any alternative, similarly durable notification of proceedings under this act at a location on or near the property and reasonably conspicuous to the owner and the general public.

72 P.S. § 5860.102. The "method chosen must be reasonable and likely to inform the public and the taxpayer of an intended real property sale." *Cruder*, 861 A.2d at 416. Posting "is important for third parties whose interest may be affected, such as mortgagors or other lien holders," and because "it advances the goal of increasing the number of bidders for the property. With more bidders, a higher sale price, presumably, will be realized, which benefits the delinquent taxpayer." *In re Tax Sale of 2003 Upset*, 860 A.2d 1184, 1188-89 (Pa. Cmwlth. 2004).

As with defects in mailed notices, a defect in posting will normally invalidate a tax sale, even when the property owner has received actual notice of the sale. "The reason for such a result is that the posting notice serves the function of notifying the general public, as well as the owner, of a tax sale." *In re Somerset Cnty. Tax Sale of Real Est. Assessed in the Name of Tub Mill Farms, Inc.*, 14 A.3d 180, 183 (Pa. Cmwlth. 2010). Further, the question is not whether the notice was actually viewed by members of the public, but rather, whether the notice was placed in a location where it reasonably could be viewed by members of the public under the specific circumstances of the case; thus, the bureau is not required to "foresee and guard against every possible 'what if'" associated with the posting. *Id*. at 184-85.

21

Posting generally must be done on the subject property, but the statute provides some flexibility if that is not feasible, and posting may still be sufficient as long as it is "likely to be seen by the public." *2003 Upset*, 860 A.2d at 1189-90 (upholding sale where posting was "taped to a tree near the [owner's] mailbox located across the road from the [p]roperty and not on the [p]roperty itself"). If the owner can see the posting, then it may also be visible to the public, which would help to satisfy the RETSL. *Id.* However, simply handing the notice to a property owner will be grounds for rejecting a sale. *See In re Sale of Real Est. by Montgomery Tax Claim Bureau for 1997 Delinquent Taxes*, 836 A.2d 1037, 1042 (Pa. Cmwlth. 2003).

Here, McGovern testified that in July 2022, she told the individual who answered the door at AES's building that she was there to post the notices. R.R. at 146a-48a. She had only two copies and he took them both, so she was not able to go behind the building to the subject parcel and physically post the notices there. *Id.* at 148a. She was not asked why she did not get more notices and return the next day to perfect the posting or why, instead, she falsely attested that she had posted the subject property. Weitoish testified that he was not present at the encounter but acknowledged that he saw the notice "placed on the front doors of the main office building" facing Route 322. *Id*. at 157a. Subsequently, under questioning from a different attorney, he restated that he "did receive the notice as it was posted to the front door" of the building. *Id*. at 158a. He confirmed that the office is on a different parcel but acknowledged that the subject parcel is directly behind the main office building, is "visible" from the building, and that someone on the way to the subject parcel would drive or walk past the building. *Id*. at 157a.

The trial court concluded that McGovern's efforts were sufficient because even if she had been able to post the notices on the subject parcel, "it would be no different if the representative [who answered the door] had waited for [] McGovern to leave and then removed the notices from the property." R.R. at 184a. We cannot agree with this reasoning. There is always the possibility that someone may improperly remove a posted notice. That did not abrogate the Bureau's legal duty to post it. It is also troubling that McGovern attested to posting the property when she admittedly did not do so on that day and never returned to do so.

The trial court then addressed Weitoish's testimony, concluding that posting the notice on the main building's front door would have been reasonable because "the public would traverse by it" to get to the subject parcel behind the building. *Id.* The trial court did not address the apparent discrepancy between McGovern's testimony that she was unable to physically post the notices when she visited and Weitoish's testimony that he saw the notices because they were posted on the front door of the main office building. However, Weitoish made that statement twice, so the trial court may have inferred that between McGovern's visit and Weitoish's arrival, someone put the notices on the door. However, that does not establish the reasonableness or sufficiency of the Bureau's posting.

AES avers that the Bureau's posting was deficient because it was not specifically placed on the subject property. AES's Br. at 19-21. AES relies on *1997 Delinquent Taxes* to add that McGovern did not post the notices at all, but admittedly only handed them over to the individual who answered the door (or when he took them from her). *Id.* at 21. The Bureau emphasizes Weitoish's testimony that the notices were ultimately posted on the building front doors and maintains that even though they were not on the subject parcel, they were "reasonably conspicuous" to

both AES, in light of Weitoish's repeated testimony that he saw them there after McGovern's visit, and, by extension, the public. Bureau's Br. at 8-9. The Bureau relies on *2003 Upset* for its position that a posting will be sufficient if it is reasonably visible. *Id*. at 9-10.

Concerning the RETSL's definition of posting, the evidence here does not state whether the subject parcel has assessed improvements, such as buildings or structures, so as to be within subsection (1). *See* 72 P.S. § 5860.102. Subsection (2) states that in the absence of assessed improvements, posting may be done on a stake "on or adjacent to the property" as long as it is done "in a manner reasonably conspicuous to the owner and the general public." *Id*. If the notice cannot be affixed on a stake, subsection (3) allows that it may alternatively be posted by "placing any alternative, similarly durable notification of proceedings under this act at a location on or near the property and reasonably conspicuous to the owner and the general public." *Id*. Thus, the statutory language provides for some flexibility in the location of a posting; the overriding requirement is reasonable visibility, both to the owner and to the public.

Here, McGovern admitted that she did not physically post the sale notices on the subject parcel as required by Sections 102 and 602(e)(3); this conflicted with her affidavit attesting that she had done so. The Bureau, which bore the burden of proof, did not establish, or even assert, that after the first visit, it attempted to perfect the posting, such as by sending McGovern out the following day with additional notices to post on stakes on or adjacent to the subject parcel. As with Sections 308(a), 602(e)(1)(2), and 607.1(a), the Bureau's failure to comply with the statute's posting requirements is troubling.

24

Our case law on posting, consistent with the language of the statute itself, reflects that it is fact-specific and that a certain degree of flexibility is permitted so long as the posting is reasonably conspicuous to the owner and public. *See Somerset Cnty. Tax Sale*, 14 A.3d at 183. For example, in *2003 Upset*, the posting had been "taped to a tree near the [owner's] mailbox located across the road from the [p]roperty and not on the [p]roperty itself." 860 A.2d at 1186. The owner saw the posting when he visited the property five days before the sale with his daughter, who pointed it out. *Id*. This Court did not specifically parse the posting definition but pointed out that Section 602 "does not explicitly state that a notice must be posted on the property subject to sale" as long as it is "reasonable and likely to inform the taxpayer" and public of the impending sale. *Id.* at 1188. We concluded that the posting, although not directly on the subject property, was "likely to be seen" by the owner and public, as shown by the fact that the owner himself, who had evidently received none of the mailed notices, personally saw the posted notice prior to the sale. *Id*. at 1190. As such, the posting was reasonable. *Id*. at 1191.

Here, as discussed above, prior to McGovern's visit, the Bureau did not strictly, or even substantially, comply with its notice mailing obligations. It provided no evidence of the initial Section 308(a) notice of delinquency and when it did not receive a certified mail green card back from the Section 602(e) notice of sale, it did no more on the basis that tracking information showed the mailing had been delivered and picked up at the McKinney address by someone. Section 607.1(a) states that if the sale notice "is not returned or acknowledged at all," the bureau must engage in reasonable efforts to determine the owner's whereabouts, including searching telephone directories and the resources of other county offices before holding the sale. 72 P.S. § 5860.607a(a). Those efforts would have revealed the

25

correct Houston address and AES's prompt payment of its taxes when it received notices at the Houston address. The Bureau admittedly did none of this prior to McGovern's visit in July 2022, which she admitted did not result in an actual posting.

Moreover, the notice was not placed on the subject parcel. The Bureau did not offer any evidence that it could not post on the subject parcel, but maintained that the notice could be seen publicly on the front doors of the office building on the neighboring parcel. However, the Bureau, which had already failed to comply with the RETSL's mailing requirements, did not establish that AES in Texas, which is the actual owner and taxpayer, could have seen the posting prior to the sale. Because the Bureau did not meet its burden and the record does not support the trial court's conclusion that the Bureau properly conducted the posting, the trial court erred in this regard.

## IV. Conclusion

Based on the foregoing discussion, we conclude that AES's objections to the trial court's May 4, 2023, order upholding the Bureau's sale of the subject parcel previously owned by AES are valid. As such, the trial court erred in denying the objections, and its order upholding the tax sale must be reversed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AES Drilling Fluids, LLC,  :
                Appellant  :
                           :
         v.                :
                           :   No. 583 C.D. 2023
Clearfield County Tax Claim Bureau  :

## **O R D E R**


AND NOW, this 9th day of June, 2025, the May 4, 2023, order of the Court of Common Pleas of Clearfield County is **REVERSED**.


_____
CHRISTINE FIZZANO CANNON, Judge